UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIANCA BUCANO, and | : |
| MELISSA BUCANO, | :CIVIL ACTION NO. 3:12-CV-606 |
| | : |
|         Plaintiffs, | :(JUDGE CONABOY) |
| | :(Magistrate Judge Blewitt) |
|         v. | : |
| | : |
| JUDGE JENNIFER SIBUM, et al., | : |
| | : |
|         Defendants. | : |
| | : |

_____

### MEMORANDUM

Here we consider the Report and Recommendation of Magistrate Judge Thomas M. Blewitt in which he recommends that Plaintiffs' Complaint be dismissed as to all claims and all Defendants.  (Doc. 10 at 35.)  In the underlying action, pro se Plaintiffs Bianca and Melissa Bucano (mother and daughter respectively) filed a form 42 U.S.C. § 1983 Complaint against the following Defendants: Judge Jennifer Sibum of the Monroe County Court of Common Pleas; the Monroe County Correctional Facility ("MCCF"); the Monroe County Courthouse; the Pennsylvania Attorney General, Insurance Division; Jennifer Harrison, Investigator with the Pennsylvania Attorney General's Office; and Mark Bellavia, Deputy Pennsylvania Attorney General ("DAG").  (Doc. 10 at 2.)

Magistrate Judge Blewitt filed his Report and Recommendation on April 23, 2012.  (Doc. 10.)  The filing included the appropriate notice regarding the filing of objections to the Report and Recommendation.  (Doc. 10 at 36-37.)

On May 7, 2012, Plaintiffs filed a document in this Court which was docketed as objections to the Report and Recommendation. (Doc. 15.)  A review of this document shows that it does not contain objections to the Report and Recommendation.  Rather, the filing complains of many aspects of Plaintiffs' Monroe County criminal trial, raises some claims which were raised in Plaintiffs' Complaint, and raises other unrelated matters.  The envelope in which the document was mailed is addressed to the "Office of the Clerk" of this Court, "Attn: Habeas Corpus Petition."  (Doc. 15-2 at 9.)  Because neither the content nor the form of Plaintiff's filing show it to be directed at Magistrate Judge Blewitt's Report and Recommendation, we will not construe it as objections.  Rather, we will review the Report and Recommendation using the standard required when no objections are filed.

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed.  *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).  Moreover, when no objections are filed, the district court is required only to review the record for "clear error" prior to accepting a magistrate judge's recommendation.  *See Cruz v. Chater*, 990 F. Supp. 375, 378 (M.D. Pa. 1998).  However, when objections are filed to a magistrate judge's Report and Recommendation, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which

2

objection is made.  *See Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).

Because no objections have been filed, we employ the clear error standard of review.[1]  For the reasons discussed below, we adopt the Report and Recommendation as modified, dismiss Plaintiffs' Complaint (Doc. 1), and allow Plaintiffs to file an amended complaint as limited by this Memorandum and the simultaneously filed Order.

## I. Background

Plaintiffs' Complaint (Doc. 1) presents primarily rambling accusations unaccompanied by factual support.  Reading the Complaint very liberally, Magistrate Judge Blewitt identified potential claims.  (*See* Doc. 10.)  In the absence of objection to the Report and Recommendation, we will not repeat the recitation of the Complaint's allegations reviewed.  (Doc. 10 at 6-11.)

By way of general background, both Plaintiffs were confined at the Monroe County Correctional Facility when they filed this action pro se on April 3, 2012.  (Doc. 1.)  It appears that the Pennsylvania Attorney General's Office prosecuted Bianca Bucano and her daughter Melissa Bucano for several counts of insurance fraud

---

[1]  Because Plaintiffs' claims are difficult to decipher and categorize, for the sake of clarity we will, in some cases, provide more background and discussion than generally required under the clear error standard.

and related offenses.[2]  Defendant Harrison investigated the case
and is listed on the Pennsylvania docket as the arresting officer.
The trial was scheduled to commence on April 16, 2012, before
Defendant Judge Sibum in the Monroe County Court of Common Pleas.
(Doc. 10 at 2 n.3.)  Judge Sibum handled most of the pretrial
matters about which Plaintiffs complain.  (Doc. 1.)  It further
appears from the Pennsylvania docket that both Plaintiffs were
found guilty of several counts on April 25, 2012, and are awaiting
sentencing.  They remain incarcerated at the Monroe County
Correctional Facility.

## II. Discussion

As a general matter, Magistrate Judge Blewitt finds that
Plaintiffs' Complaint is in clear violation of the pleading
standard set out in Rule 8 of the Federal Rules of Civil Procedure.
(*See* Doc. 8 at 13.)  We concur with this assessment.

### A. Screening Plaintiff's Claims

### 1.   Confinement and Medical Care Claims

We concur with Magistrate Judge Blewitt that, as pretrial
detainees, Plaintiffs' claims related to confinement and medical
care brought pursuant to 42 U.S.C. § 1983 are brought under the
Fourteenth Amendment.  (Doc. 10 at 16-17.)  We will review the

---

[2]  The Court has obtained the Dockets and Court Summaries for
both Plaintiffs through http://ujsportal.pacourts.us.  Plaintiff
Bianca Bucano's Criminal Docket number is CP-45-CR-778-2010.
Plaintiff Melissa Bucano's Criminal Docket number is CP-45-CR-781-
2010.

appropriate standard in our discussion of the specific claim
asserted.

### a.   Melissa Bucano's Confinement

We agree with the Report and Recommendation that Plaintiffs'
Complaint fails to state a claim regarding the confinement of
Plaintiff Melissa Bucano.  However, for the reasons discussed
below, we do not concur that allowing amendment of the claim would
be futile.

Plaintiffs assert that Plaintiff Melissa Bucano is being
abused mentally at the Monroe County Correctional Facility by the
direct orders of Defendant Judge Sibum.  (Doc. 1 at 1.)  Other
allegations regarding Melissa's confinement include the following:
she was on suicide watch from "12/13-12/20" and in "'B' Status in G
Unit both for no reason and to pressure her to take guilty plea"
(Doc. 1 at 2) and in retaliation for her refusal to sign a guilty
plea (Doc. 2 at 6); the specified confinements were at Judge
Sibum's "request [to] the Warden" (Doc. 1 at 2); she remained in G
Unit at the time the Complaint was filed on April 3, 2012 (*id.*);
and she is the only inmate to be held in G Unit in a cell for
twenty-two (22) hours per day (Doc. 2 at 5).

A pretrial detainee's challenge to the conditions of her
confinement is, as noted above, brought under the due process
clause of the Fourteenth Amendment rather than the Eighth Amendment
which would be applicable to such a claim brought by a convicted

prisoner. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). Under the due process clause, "the proper inquiry is whether the [challenged] conditions amount to punishment of the detainee." *Id.* at 535. "Thus, sentenced prisoners are protected from only punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment." *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) (not precedential) (quoting *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005)). "In order to determine whether the challenged conditions of pre-trial confinement amount to punishment, '[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.'" *Hubbard I*, 399 F.3d at 158 (quoting *Bell v. Wolfish*, 441 U.S. at 538-39).

In *Paith v. County of Washington*, 394 F. App'x 858 (3d Cir. 2010) (not precedential), the Third Circuit Court of Appeals explained that "*Bell* requires application of a two part test. '[W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.'" *Paith*, 394 F. App'x at 861 (quoting *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983) *Union County Jail Inmates*, 713 F.2d at 992)). Other Third Circuit decisions indicate that the protections provided a pretrial detainee in a conditions of confinement case "are at least

6

as broad, if not broader," than those provided a convicted prisoner under the Eighth Amendment, *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (citing *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)), and negligent conduct on the part of a prison official cannot give rise to a § 1983 conditions of confinement claim brought by a pretrial detainee, *Burton*, 401 F. App'x at 637 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

In *Paith*, the Third Circuit applied the Fourteenth Amendment *Bell* standard to a case where an inmate having the status of a pretrial detainee was confined in the facility's "green room" which was used for people coming down from drugs, violent people, or people on suicide watch.  394 F. App'x at 861.  The Circuit Court's conclusion that, in spite of the sparse conditions of the green room, the conditions did not constitute punishment in violation of her Fourteenth Amendment included consideration of the following circumstances:

> [The plaintiff] was placed in the green room
> as a protective measure after she exhibited
> self-destructive behavior.  Although the
> record fails to establish with certainty the
> duration of her confinement in the green
> room, it appears to be less that a day as she
> was placed in the room after 9 p.m. and was
> returned to general housing the next day
> following evaluation by the prison
> psychiatrist who prescribed medications to
> address her mental impairments.

7

394 F. App'x at 861.  *Paith* demonstrates that, although it is generally true that an inmate does not have a constitutional right to a certain classification or custody level in prison or a right to confinement in a particular prison,[3] facility or program (*see* Doc. 10 at 15-16 (citing cases)), circumstances *may* take a given case out of the norm.

Furthermore, confinement based on psychiatric or other stigmatizing classifications may implicate the procedural due process protections of the Fourteenth Amendment.  *Vitek v. Jones*, 445 U.S. 480, 488 (1980); *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010).  In addition to the consideration of whether the condition is punishment of a pretrial detainee, general due process considerations may come into play for all incarcerated persons "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing."  *Renchenski*, 622 F.3d at 325 (citing *Vitek*, 445 U.S. at 488).  In *Vitek*, the Court held that the involuntary transfer of a state prisoner to a mental hospital

---

[3]   In *Cobb v. Atych*, 643 F.2d 946, our Circuit Court noted that pretrial detainees have federally protected liberty interests "that are different in kind from those of sentenced inmates."  643 F.3d at 957.  Explaining that "[p]retrial detainees are restrained only as a means to ensure their eventual presence at trial and sentencing[,] . . . they retain several constitutionally protected liberty interests relevant to the conditions of their confinement that are not fully available to sentenced inmates."  *Id.* (citations omitted).  These include the right to effective assistance of counsel which may be hindered by transfers to other facilities. *Id.*

implicated a due process liberty interest.  445 U.S. at 487.  As

explained in *Renchenski*, in *Vitek*

> the Court noted that the stigmatizing
> characterization of the prisoner as mentally
> ill, when coupled with the transfer to an
> asylum to participate in mandatory behavioral
> therapy, "constituted a major change in the
> condition of confinement amounting to a
> grievous loss that should not be imposed
> without the opportunity for notice and an
> adequate hearing."

*Renchenski*, 622 F.3d at 326.

Where a plaintiff has been transferred to a mental health unit

or facility for a *brief* period for observation or evaluation

purposes, courts have determined that *Vitek* does not give rise to a

cause of action.  *Fortuner v. Bitner*, 285 F. App'x 947, 950 (3d

Cir. 2008) (not precedential).  *Fortuner* cited *Gay v. Turner*, 994

F.2d 425, 427 (8th Cir. 1993), quoting it for the proposition that

"[t]he temporary transfers in the present case were unlike the

indefinite commitment in *Vitek* and did not constitute a major

change in the conditions of confinement amounting to a grievous

loss to the inmate which would require the *Vitek* procedural

protections."  *See also*, *Jefferson v. Helling*, 423 F. App'x 612,

613 (9th Cir. 2009); *Gonzales v. Carpenter*, No. 9:08-CV-629, 2011 WL

768990, at *11 (S.D.N.Y. Jan. 3, 2011) (listing cases).

These cases all demonstrate that the inquiry is fact-specific.

Because the cases dealing with transfer to a mental health unit

speak of the importance of considerations concerning both the

duration and conditions of confinement, no categorical rule precludes a pretrial detainee's claim that she was improperly detained on suicide watch and/or in a mental health unit.

Here we do not know the details of Plaintiff Melissa Bucano's confinement which she alleges violated her constitutional rights. However, based on the foregoing discussion, we cannot say that it would be futile to allow Plaintiff Melissa Bucano to amend her confinement claim, particularly since certain allegations indicate her restrictive confinement may have been of more that a brief duration.  We also cannot find that amendment would be futile based on her failure to exhaust this claim as the face of the complaint does not clearly allow the Court to make the determination that she has not adhered to any MCCF grievance process that may exist.[4]  *Ray v. Kertes*, 285 F.3d 287, 296-97 (3d Cir. 2002) (because failure to exhaust administrative remedies is an affirmative defense, *sua sponte* dismissal is not appropriate under the Prison Litigation Reform Act unless failure to exhaust is clear from the face of the complaint).

Finding that the confinement aspect of Plaintiff's claim is

---

[4]  Plaintiffs answered "yes" to the form complaint's questions of whether there was a grievance procedure at MCCF and whether they had presented the facts related to their complaint in that procedure.  (Doc. 1 at 2.)  Their answer to subsequent questions casts doubt on these affirmative responses.  (Doc. 1 at 2-3.)  The apparently incongruous responses are not sufficient to establish that Plaintiff failed to exhaust administrative remedies.

not precluded as a matter of law, we turn to consideration of whether the claim can be asserted against the only Defendant named in connection with it--Judge Sibum of the Monroe County Court of Common Pleas. (*See* Docs. 1, 2.)  While we agree with Magistrate Judge Blewitt that Plaintiffs have failed to state a claim against Judge Sibum, we cannot say as a matter of law that Judge Sibum should be dismissed from liability for this claim with prejudice. (Doc. 10 at 31.)  This determination is based on our conclusion that we cannot say as a matter of law that judicial immunity would necessarily shield Judge Sibum from liability for the acts vaguely alleged.

The doctrine of judicial immunity is a well established historic doctrine.  "As early as 1872, the Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872) (alteration in *Stump*).  *Stump* added that the "necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him[,] . . . [and] the scope of the judge's jurisdiction must be construed broadly where

11

the issue is the immunity of the judge." 435 U.S. at 356. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only where he has actied in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57 (internal quotation omitted). The Third Circuit summarized the doctrine as one which provides that "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006).

"The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his official capacity." *Stump*, 435 U.S. at 362. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). Noting that caution should be exercised in extending immunities, the Supreme Court noted that difficulties in applying the doctrine arise "in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. . . . [I]mmunity is justified and defined by the *functions* it protects and serves, not by the persons to whom it

12

attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).  The
Court went on to explain that, although it had "never undertaken to
articualte a precise and general definition of the class of acts
entitled to immunity[,] [t]he decided cases . . . suggest an
intelligible distinction between judicial acts and the
administrative, legislative, or executive functions that judges may
on occasion be assigned by law to perform."  *Id.*

    Taking Plaintiffs' claim that Judge Sibum directed Plaintiff
Melissa Bucano to be placed on suicide watch as true and further
assuming the truth of Plaintiffs' assertion that Judge Sibum
directed Plaintiff Melissa Bucano's "B status on G Unit"
confinement and that status and unit relates to mental or
psychiatric considerations or is somehow more restrictive than
general population status, Judge Sibum would only be entitled to
judicial immunity if her directives/orders regarding placement are
considered "judicial acts" over which she had jurisdiction.

    Here we cannot say as a matter of law that Judge Sibum's
alleged actions were "judicial acts" over which she had
jurisdiction.  Upon evidence of mental instability or professional
report of same, judges handling criminal cases order defendants to
be monitored under suicide watch and undergo psychiatric
evaluations.  *See*, *e.g.*, *Cooper v. County of Washtenaw*, 222 F.
App'x 459, 462 (6th Cir. 2007); *Shallow v. Rogers*, 201 F. App'x 901,
904 (3d Cir. 2006).  Assuming *arguendo* that Judge Sibum had

13

something to do with Plaintiff Melissa Bucano's being placed on suicide watch, we do not know the circumstances related to her action--circumstances which would go to the inquiry of whether Judge Sibum performed a judicial act over which she had jurisdiction.  From the sparse pleading, we are similarly unable to determine whether it would also be considered a "judicial act" within Judge Sibum's jurisdiction to specify to a warden the type of confinement in which criminal defendant Melissa Bucano should be held.[5]

Based on this analysis, we conclude that Plaintiffs' claim against Judge Sibum related to Plaintiff Melissa Bucano's confinement should be dismissed without prejudice.  If Plaintiffs file an amended complaint, the doctrine of judicial immunity will

---

[5] With this analysis, we keep in mind that if Plaintiffs file an amended complaint and development of the record shows that Judge Sibum's actions were judicial in nature, Plaintiffs' allegations that Judge Sibum acted for an improper purpose, even if true, would not deprive her of judicial immunity in that even malicious action does not deprive a judge of judicial immunity.  *See Stump*, 435 U.S. at 356-57.

We further note that if the court were to find that judicial immunity did not apply to the acts in question or the acts were attributable to a properly named defendant, allegedly retaliatory acts may be actionable even when the retaliatory act does not involve a liberty interest.  *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (citing *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999)).  "'Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'"  *Allah*, 229 F.3d at 224-25 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)).

be analyzed in the context of the allegations made therein.[6]

### b.   Plaintiff Melissas Bucano's Medical Claim

We concur with Magistrate Judge Blewitt that Plaintiff Melissa Bucano has failed to state a claim based on her assertion that she was denied proper asthma treatments at times.  We also concur that the Due Process Clause provides pretrial detainees with as much protection as the Eighth Amendment provides convicted prisoners, and the Eighth Amendment analysis is properly used to analyze a pretrial detainees medical claim.  *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003).

As with our finding on exhaustion of her confinement claim, the assertions regarding exhaustion made in the Complaint (Doc. 1 at 2-3) do not allow us to conclusively determine that failure to exhaust would render amendment of Plaintiff Melissa Bucano's medical claim futile.  While it is unlikely that, even if a proper defendant were named, Plaintiff could make out a constitutional violation based on failing to get treatment "at times," in an abundance of caution we will dismiss this claim without prejudice as we cannot say that amendment would be futile.

### c.   Plaintiff Bianca Bucano's Confinement

---

[6]   In an untitled document filed at the same time as the Complaint (Doc. 1), and docketed as a "Memorandum of Law," Plaintiffs assert that the actions taken showed "an abuse of power by Judge Sibum and the MCCF Warden."  (Doc. 2 at 5.)   The MCCF Warden is not a defendant in this case.  We make no determination as to the merits of a confinement claim brought by Plaintiff Melissa Bucano against any other potential defendant.

We concur with Magistrate Judge Blewitt that Plaintiff Bianca Bucano' being "taken out of a cell [and] put on a cot" does not state a constitutional claim.  The general pretrial detainee conditions of confinement standard identified in relation to Plaintiff Melissa Bucano's confinement claim applies to this claim as well.

As noted with the two previous claims, we cannot determine the exhaustion status of this claim.  (*See* Doc. 1 at 2-3.)  While the success of this claim is unlikely because, even if Plaintiff Bianca Bucano were to name a proper defendant, the *de minimis* nature of the confinement change alleged would not, without more, give rise to a constitutional violation, we cannot say amendment of the claim would likely be futile.  In that overcrowding in some circumstances may give rise to a violation of a pretrial detainee's constitutional rights, *Hubbard v. Taylor*, 538 F.3d 229 (2008), in an abundance of caution, we will dismiss this claim without prejudice.

## 2.   **Remaining Claims Against Judge Sibum**

With the exception of Melissa Bucano's confinement claim, we concur with Magistrate Judge Blewitt that Judge Sibum is immune from suit on all other claims against her.  (Doc. 10 at 29-32.) Plaintiffs' allegations regarding Judge Sibum's rulings in their criminal cases and Plaintiff Bianca Bucano's civil cases are barred by the doctrine of judicial immunity.  (*Id.*)

3. **Claims Against Monroe County Courthouse and Monroe County Correctional Facility**

We concur with Magistrate Judge Blewitt that Plaintiffs' claims against Defendants Monroe County Courthouse and Monroe County Correctional Facility should be dismissed with prejudice as the Complaint does not make not any cognizable claim against these Defendants and they are not proper Defendants in a § 1983 action.[7] (Doc. 10 at 20.)

4. **Claims Against Pennsylvania Attorney General Defendants**

We concur with Magistrate Judge Blewitt that Plaintiffs fail to state a claim against the Pennsylvania Attorney General Defendants and, for the reasons discussed in the Report and Recommendation, these Defendants and the claims against them should be dismissed with prejudice. (Doc. 10 at 21-26.)

5. **Other Matters**

We also concur with Magistrate Judge Blewitt that Plaintiffs' claims regarding their arrest, false charges being lodged against them, and other complaints regarding their state court proceedings are barred from consideration by this Court at this time. Claims related to the fact or duration of their confinement (including

---

[7] To the extent Plaintiffs mention being prevented from attending a child support hearing, any constitutional access to the courts claim is not sufficiently pled. *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996). To the extent they assert they went without an attorney for a period of time, no Sixth Amendment claim is stated as the right to counsel is only guaranteed at the "critical stages" of a proceeding. *See Henderson v. Frank*, 155 F.3d 159, 166 (3d Cir. 1998).

allegations of pretrial improprieties) are properly brought as a habeas corpus action subject to the relevant exhaustion requirements.  As noted above, both Plaintiffs are now convicted and awaiting sentencing.  Therefore, any claim which would necessarily invalidate their conviction is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Because of the current procedural posture of their criminal case, their claims regarding venue and recusal are either moot or properly the subject of state court action.

**B.   *Plaintiffs' Other Filings***

Plaintiffs have filed numerous documents since Magistrate Judge Blewitt issued his Report and Recommendation.  We find that none of these filings pertains to the merits of their 42 U.S.C. § 1983 action nor do any require the attention of the Court beyond the following brief review.

**1.   Correspondence Dated May 1, 2012**

In the correspondence from Plaintiff Bianca Bucano dated May 1, 2012, Plaintiff informs the Court about her understanding of the payment of the filing fee for this action and that she is not responsible for Plaintiff Melissa Bucano's filing fee.  (Doc. 13.) Though allowed to proceed without full payment of fees, each joined IFP litigant is required to eventually pay a full individual filing fee which is now $350.00 in this Court.   *See Hagan v. Rogers*, 570 F.3d 146, 155-56 (3d Cir. 2009).  Plaintiff Bianca Bucano is

responsible only for her own filing fee.

## 2.    **Document Filed on May 7, 2012**

As noted above, this untitled document was docketed as objections to the Report and Recommendation but, upon review, the Court has determined docketing it as such was improper.  The allegations contained in the filing relate either to Plaintiffs' criminal trial or matters not relevant to consideration of Plaintiffs' § 1983 action.  (Docs. 15, 15-1, 15-2.)  Additionally, the envelope in which this filing was mailed notes "Attn: Habeas Corpus Petition."  (Doc. 15-2 at 9.)

While a habeas filing related to their state criminal trials is premature due to habeas exhaustion requirements, Plaintiffs are advised that any such action must be filed separately from the action here considered and filed in accordance with relevant federal and local rules.

## 3.    **Application to Proceed In Forma Pauperis**

In this form Application to Proceed In Forma Pauperis (Doc. 16) filed on May 15, 2012, Plaintiffs apparently seek to file another action related to their confinement.  Their claims and requests to proceed IFP must be filed as a separate action instituted with the filing of a complaint in compliance with the Federal Rules of Civil Procedure and Local Rules of Court of the Middle District of Pennsylvania.

19

**4.**   **June 12, 2012, Correspondence**

With this correspondence, Plaintiff Bianca Bucano notes she is trying to find an attorney to handle her case, requests monetary damages of $5,000,000 in this action, and would like to be advised regarding the filing fee.  We do not construe this as a request for appointment of counsel, nor do we find that the correspondence requires any action by the Court.

### III. Conclusion

For the reasons discussed above, Magistrate Judge Blewitt's Report and Recommendation (Doc. 10) is adopted as modified. Plaintiffs' Complaint (Doc. 1) is dismissed without prejudice on their claims regarding Plaintiff Melissa Bucano's confinement and medical needs, and Plaintiff Bianca Bucano's confinement.  The Complaint is dismissed with prejudice in all other respects.  This determination means that all Defendants other than Judge Sibum are dismissed from this action and the only claim that goes forward against her is the confinement claim regarding Melissa Bucano. Plaintiffs will be allowed fourteen (14) days to file an amended complaint consistent with this Memorandum and the simultaneously filed Order, and failure to do so will result in dismissal of this case.  Plaintiffs applications to proceed in forma pauperis (Docs. 3, 6) are granted for this filing only.  An appropriate Order will be filed simultaneously with this action.

> S/Richard P. Conaboy
> RICHARD P. CONABOY
> United States District Judge

DATED: June 25, 2012