IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BIANCA BUCANO, and | : | CIVIL ACTION NO. **3:CV-12-0606** |
| MELISSA BUCANO, | : | |
| Plaintiffs | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JUDGE SIBUM, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On April 3, 2012, Plaintiffs Bianca Bucano , currently confined as an inmate at SCI-Muncy located in Muncy, Pennsylvania, and her daughter Melissa Bucano, currently confined as an inmate at SCI-Cambridge Springs located in Cambridge Springs, Pennsylvania, jointly filed, *pro se*, filed this instant civil rights action pursuant to  42 U.S.C. § 1983. (Doc. 1). Plaintiffs attached two exhibits to their original Complaint.   Plaintiffs also filed five form Motions for Leave to Proceed *in forma pauperis*.  (Docs. 3, 6, 16, 27 and 34).  Further, Plaintiffs filed a 5-page handwritten brief in support of their original Complaint.  (Doc. 2).  Both Plaintiffs were previously confined in the Monroe County Correctional Facility ("MCCF"), Stroudsburg, PA, while they were awaiting their state court criminal trial.   Subsequently, both Plaintiffs were convicted and sentenced, and they are presently serving their sentences imposed by the Monroe County Court of Common Pleas in the above stated prisons.

The initial  six (6) named Defendants in Plaintiffs' original Complaint were: (1) Judge Jennifer Sibum of the Monroe County Court of Common Pleas; (2) Monroe County Courthouse; (3) MCCF;

(4) PA Attorney General's Office, Insurance Division; (5) Jennifer Harrison, Investigator with the PA Attorney General's Office; and (6) Mark Bellavia, Deputy PA Attorney General ("DAG"). Plaintiffs were, in part, complaining about actions taken against them in their criminal cases which were pending in Monroe County Court of Common Pleas, including *Com. of PA v. Bianca Aura Bucano*, CP-45-CR-778-2010.[1]

On April 23, 2012, we screened Plaintiffs' Document 1 Complaint and issued a Report and Recommendation recommending that the Court grant Plaintiffs' Documents 3 and 6 motions to proceed *in forma pauperis* for purposes of filing this action, and that Plaintiffs' Complaint (Doc. 1) be dismissed with prejudice against all Defendants with respect to all of Plaintiffs' claims. (Doc. 10).

On June 25, 2012, the Court adopted our Document 10 Report and Recommendation with modifications, stating the following:

1. Magistrate Judge Blewitt's Report and Recommendation is (Doc. 10) is adopted as modified;
2. **Plaintiffs' Complaint (Doc. 1) is dismissed without prejudice on their claims regarding Plaintiff Melissa Bucano's confinement and medical needs, and Plaintiff Bianca Bucano's confinement**;
3. Plaintiffs' Complaint (Doc. 1) is dismissed with prejudice in all other respects;
4. **This determination means that all Defendants other than Judge Sibum are dismissed from this action with prejudice; the confinement claim regarding Melissa Bucano is dismissed against Judge Sibum without prejudice**; all other claims against Judge Sibum are dismissed with prejudice;
5. If they choose to do so, Plaintiffs may file an amended complaint consistent with this Order and the simultaneously filed Memorandum on or before July 13, 201[2], and failure to do so will result in dismissal of this case;
6. Plaintiffs applications to proceed in forma pauperis (Docs. 3, 6) are granted

---

[1] We have obtained a copy of Plaintiff Bianca Bucano's Monroe County Criminal Docket for case number CP-45-CR-778-2010 at http://ujsportal.pacourts.us.   We take judicial notice of Plaintiff Bianca's Monroe County Criminal Docket, CP-45-CR-778-2010.

only for the filings allowed by this Order.

(Doc. 20, pp. 1-2)(footnote omitted)(emphasis added).

On July 9, 2012, Plaintiffs filed a letter in an attempt to amend their claims. (Doc. 21). On July 10, 2012, the Court issued an Order stating that Document 21 would not be accepted as an amended complaint, and granted Plaintiffs until July 20, 2012, to properly file an amended complaint in accordance with the Court's Document 20 Order issued on June 25, 2012. (Doc. 22).

On July 19, 2012, Plaintiffs filed a Motion for R.O.R. Bail Pending Appeal. (Doc. 29). Plaintiffs sought this federal court to intervene into their Monroe County Court criminal case, to release them on bail on their own recognizance from confinement in prison.

On July 24, 2012, Plaintiff Bianca Bucano filed an Amended Complaint (Doc. 23) against Defendant Judge Jennifer H. Sibum, and Plaintiff Melissa Bucano filed a separate Amended Complaint (Doc. 26) against Defendant Judge Jennifer H. Sibum.

On August 1, 2012, Plaintiffs Bianca and Melissa Bucano jointly filed, *pro se*, a separate action in the United States District Court for the Middle District of Pennsylvania under Docket Number 3:12-CV-1450, pursuant to 28 U.S.C. § 1331, against the following six (6) Defendants: (1) Monroe County Correctional Facility; (2) Sergeant Kramer; (3) Warden Asure; (4) Corrections Officer Viola; (5) Prime Care; and (6) Ms. Best. (3:12-CV-1450, Doc. 1). Plaintiffs incorrectly styled their 3:12-CV-1450 case as against federal officials under §1331. Plaintiffs' 3:12-CV-1450 case was under §1983 since it was against state actors. Plaintiffs also filed a Motion for leave to proceed *in forma pauperis*. (3:12-CV-1450, Doc. 2). On August 13, 2012, the Court issued an Order directing the Clerk of Court to consolidate Civil Action Number 3:12-CV-1450 (Member Case) into Civil

Action 3:12-CV-0606 (Lead Case). (3:12-CV-0606, Doc. 32).

Because Plaintiffs have once again filed Motions to Proceed *in forma pauperis* (Lead Case, 3:12-CV-0606, Docs. 3, 6, 16, 27 and 34; Member Case, 3:12-CV-1450, Doc. 2)) with respect to their instant case and because the Court granted Plaintiffs' Motions to Proceed *in forma pauperis* in an Order dated June 25, 2012 (Doc. 20)), we again will recommend that the Court grant all of Plaintiffs' Motions to Proceed *in forma pauperis* for purposes of screening their Amended Complaints filed under Document 23 and 26 of Lead Case, 3:12-CV-0606 and Plaintiffs' Complaint filed under Document 1 of Member Case 3:12-CV-1450. We now screen Plaintiffs' Amended Complaints, including the Document 23 Amended Complaint filed by Plaintiff Bianca Bucano in Lead Case 3:12-CV-0606, the Document 26 Amended Complaint filed by Plaintiff Melissa Bucano in Lead Case 3:12-CV-0606, and the Document 1 Complaint filed by both Plaintiffs in Member Case 3:12-CV-1450. We will discuss each document in turn.

As stated, Plaintiffs' case is a civil rights action pursuant to 42 U.S.C. §1983 and, is not a *Bivens* action under 28 U.S.C. § 1331. *See Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa.). Plaintiffs are only claiming violations of their constitutional rights by state actors. This Court has subject matter jurisdiction over Plaintiffs' §1983 case under 28 U.S.C. §1331 and §1343(a).

II.     **STANDARDS OF REVIEW.**

        *A.     PLRA*

The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C.

---

[2] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

§ 1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

### B.    SECTION 1983 STANDARD

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").  "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra.* It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

**C.    *MOTION TO DISMISS STANDARD***

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,*
> --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint
> must contain sufficient factual matter, accepted as true to 'state a claim that relief is

plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal

elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

### III. AMENDED COMPLAINTS AND COMPLAINT ALLEGATIONS AND DISCUSSION.

#### A. DOCUMENT 23 AMENDED COMPLAINT

##### 1. Allegations

On July 24, 2012, Plaintiff Bianca Bucano filed her Document 23 Amended Complaint against Defendant Judge Jennifer H. Sibum of the Monroe County Court of Common Pleas pursuant to 42 U.S.C. § 1983. (3:12-CV-0606, Doc. 23). In her Amended Complaint, Plaintiff Bianca Bucano alleges that Defendant Judge Sibum: (1) improperly dismissed Plaintiff's unrelated civil hit-and-run suit against Alvin Walker, Jr., and improperly dismissed her worker's compensation suit; (2) improperly reopened a child support case against her ex-husband Anthony Guerra that had already been opened and closed in New York; and (3) did not act with impartiality and fairness, but rather with bias, when Judge Sibum set bail and subsequently convicted and sentenced Plaintiff Bianca Bucano and her children Melissa Bucano and Christopher Bucano. (3:12-CV-0606, Doc. 23, pp. 2-3). Furthermore, in her Complaint, Plaintiff admits that she has not filed a grievance regarding her claims because "[she does] not think MCCF will give [Plaintiffs] a grievance because [they] asked for them and were denied. Also, this lawsuit is for the judge." (3:12-CV-0606, Doc. 23, p. 1).[3]

---

[3]Prior to filing a civil rights action in federal court, an inmate must utilize the grievance procedure available in the prison. The inmate must exhaust all of her available administrative remedies with respect to each of her claims prior to filing a civil rights suit. Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Spruill v. Gillis*, 372 F. 3d 218, 222 (3d Cir. 2004); *Jones v. Bock*, 549 U.S. 199, 215 (2007). It does not appear from Plaintiff's Doc. 23 Amended Complaint that she fully exhausted all of her administrative remedies available at MCCF. However, Plaintiff Bianca

As relief, Plaintiff Bianca Bucano requests that this Court: (1) reopen and settle her civil hit-and-run suit against Alvin Walker, Jr., and her worker's compensation suit in her favor for "pain and suffering and medical bills and lost wages"; (2) reverse Judge Sibum's decision to reopen Plaintiff Bianca Bucano's child support case against her ex-husband and return the case from Pennsylvania to New York, where it was already closed in August 2011; (3) declare her criminal trial as a mistrial based on Judge Sibum's bias and lack of impartiality and fairness; and (4) release her and her children Plaintiff Melissa Bucano and son Christopher Bucano from prison because "they were falsely accused and did not have a fair trial [and were not] allowed to take our 18 month (sic) plea" less time served. (3:12-CV-0606, Doc. 23, p. 4).

## 2. Discussion

To reiterate, the Court issued an Order on June 25, 2012, in Civil No. 12-0606, permitting Plaintiffs to file an Amended Complaint, stating the following, in part:

2. Plaintiffs' Complaint (Doc. 1) is dismissed without prejudice on their claims regarding Plaintiff Melissa Bucano's confinement and medical needs, and Plaintiff Bianca Bucano's confinement;

3. Plaintiffs' Complaint (Doc. 1) is dismissed with prejudice in all other respects;

4. This determination means that all Defendants other than Judge Sibum are dismissed from this action with prejudice; the confinement claim regarding Melissa Bucano is dismissed against Judge Sibum without prejudice; all other claims against Judge Sibum are dismissed with prejudice;

---

Bucano's claims against Defendant Judge Sibum which do not challenge the conditions of her prior confinement at MCCF need not be exhausted via administrative remedies available at MCCF.

5. If they choose to do so, Plaintiffs may file an amended complaint consistent with this Order and the simultaneously filed Memorandum on or before July 13, 201[2], and failure to do so will result in dismissal of this case;

(3:12-CV-0606, Doc. 20, p. 1).

As noted, it does not appear that Plaintiffs have exhausted their administrative remedies at MCCF regarding their claims which relate to the conditions of their previous confinement at MCCF. Also, as stated, the Court permitted Plaintiffs to amend their Complaint based only on their Eighth Amendment confinement and medical care claims. However, it is evident upon reading Plaintiff Bianca Bucano's Document 23 Amended Complaint that she did not comply with the Court's Document 20 Order. Plaintiff Bianca Bucano did not at all attempt to amend any confinement or medical care claims, nor did she allege new § 1983 claims against Defendant Judge Sibum. Plaintiff essentially is challenging the very fact of her confinement based on Defendant Judge Sibum's alleged lack of impartiality and fairness, and bias against, Plaintiff Bianca Bucano and her children Melissa and Christopher in their Monroe County Court criminal trial in which they were convicted. (3:12-CV-0606, Doc. 23, pp. 2-3). Insofar as Plaintiff Bianca Bucano is again attempting to reassert her claims that this Court should order Judge Sibum to reopen and settle her civil hit-and-run suit against Alvin Walker, Jr., and her worker's compensation suit in her favor for "pain and suffering and medical bills and lost wages" and that this Court should reverse Judge Sibum's decision to reopen Plaintiff Bianca Bucano's child support case against her ex-husband, this Court has dismissed these claims with prejudice.

To the extent that Plaintiff Bianca Bucano is challenging the fact or length of her or her daughter Plaintiff Melissa Bucano's incarcerations, the legality of their present confinement, and that

violations of their constitutional rights occurred during the Monroe County Court criminal proceedings against them, these are claims that: (1)are barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), until Plaintiffs can show that their Monroe County Court convictions and sentences have been invalidated or overturned *via* the state court appeals process; or (2) must be properly raised in habeas petitions under 28 U.S.C. § 2254, not under 42 U.S.C. § 1983, after Plaintiffs exhaust their state court remedies, including their direct and collateral appeals of their Monroe County Court judgments of sentences. *See Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011)(The *Heck* favorable termination rule applies to §1983 civil rights actions); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973)( The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his or her conditions of confinement violate the constitution, but is not challenging the fact or length of his or her custody); *see also Muhammad v. Close*, 124 S. Ct. 1303, 1304 (2004 (Per Curiam); *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002)(a §1983 action is not the appropriate action for claims challenging bail, a conviction and/or a sentence).

The Third Circuit in *Leamer v. Fauver*, 288 F. 3d at 542, stated:

> whenever the challenge ultimately attacks the 'core of habeas' -- the
> validity of the continued conviction or the fact or length of the
> sentence -- a challenge, however denominated and <u>regardless
> of the relief sought,</u> must be brought by way of a habeas corpus
> petition. Conversely, when the challenge is to a condition of
> confinement such that a finding in plaintiff's favor would not
> alter his sentence or undo his conviction, an action under § 1983
> is appropriate. (Emphasis added).

Plaintiffs must file petitions for writ of habeas corpus under 28 U.S.C. §2254, after they exhaust their state court remedies, to raise their present claims that their confinement in prison is

unlawful. *See Defoy v. McCullough*, 393 F.3d 439, 441-442 (3d Cir. 2005). Therefore, we will recommend the claims of Plaintiff Bianca Bucano in her Document 23 Amended Complaint that challenge her and her daughter Plaintiff Melissa Bucano's fact, length and legality of their confinement be dismissed with prejudice because these claims are *Heck* barred, and are not claims properly brought in a § 1983 action, but rather must be raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

To the extent that Plaintiff Bianca Bucano is raising claims under the Fourteenth Amendment against Defendant Judge Sibum and is deemed as seeking monetary damages, we will recommend that these claims against this Defendant be dismissed with prejudice. We find that Plaintiff Bianca Bucano's claims against the Judicial Defendant in this case are barred based on the doctrine of Judicial Immunity. We find that the Eleventh Amendment of the United States Constitution protects Defendant Judge Sibum from suit in federal court because Plaintiff Bianca Bucano clearly sues Defendant Judge Sibum entirely for decisions that were made while acting in her judicial capacity during Plaintiffs' Bianca and Melissa Bucano's Monroe County Court criminal cases, such as setting the amount of Plaintiffs' bail and dismissing Bianca's civil cases as discussed above in the preceding allegations section. *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa. 2007); *Clark v. Conahan*, 737 F.Supp. 2d 239, 255-56 (M.D. Pa. 2010); *Dougherty v. Snyder*, 2011 WL 1871226, *13; *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 696 W.D. Pa. 2009).

Plaintiff Bianca Bucano's Document 23 Amended Complaint against Defendant Judge Sibum seeks to redress actions taken and decisions rendered by Judge Sibum within her jurisdiction and

within her official judicial capacity in her courtroom in Monroe County, seemingly during the Plaintiff Bianca and Melissa Bucano's pre-trial matters in their criminal cases and in Bianca's civil cases against Alvin Walker, Safeco Insurance Company and against her ex-husband for child support. As such, Defendant Judge Sibum is clearly entitled to absolute judicial immunity.

In *Clark*, 737 F.Supp. 2d at 256, the Court stated:

> For judicial immunity to apply, only two requirements must be met: 1) jurisdiction over the dispute, and 2) a judicial act. *Id.* at *7. As to the first, a judge is not immune only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted). As to the second prong, judicial immunity extends only to "judicial acts," not administrative, executive, or legislative ones. *Id.* at 360–61, 98 S.Ct. 1099. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump,* 435 U.S. at 356, 98 S.Ct. 1099 (citation omitted). The fact that the judge was incorrect about the status of jurisdiction or that there were procedural errors causing the judge to act without jurisdiction does not satisfy the requirements for defeating immunity. *Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 771 (3d Cir.2000). In determining whether an act is judicial, it is appropriate to consider 'the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge,' and 'the expectations of the parties, *i.e.,* whether they dealt with the judge in his official capacity.' " *Wallace,* 2009 WL 4051974, at *7 (quoting *Stump,* 435 U.S. at 362, 98 S.Ct. 1099). "Acts which are traditionally done by judges include issuing orders, resolving cases and controversies, making rulings, and sentencing criminal defendants. Other actions such as sending a fax, or hiring and firing subordinates, have been found to be administrative, rather than judicial, acts. Note, however, that even if an act is not judicial, there may be still be immunity if the act is legislative or executive in nature." *Id.*

We find that Defendant Judge Sibum, who presided over Plaintiffs Bianca and Melissa Bucano's pre-trial matters in their Monroe County Court criminal cases and who presided over Bianca's civil cases, is entitled to absolute judicial immunity with respect to all of Plaintiffs' damages claims against her. We find that Plaintiff Bianca Bucano's present claims raised in her Document 23 Amended Complaint against Defendant Judge Sibum, as detailed above, relate to the

performance of Judge Sibum's judicial duties in handling Plaintiffs' pre-trial matters and related court matters against Plaintiffs, such as the amounts of their bail, and that these claims against this Judicial Defendant are precluded by absolute judicial immunity. *See Stankowski*, 487 F. Supp. 2d 543; *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *7 (M.D. Pa.); *Rush v. Wiseman*, 2010 WL 1705299, *7; *Clark*, 737 F.Supp. 2d at 256; *Dougherty v. Snyder*, 2011 WL 1871226, *13; *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d at 696; *Brookhart v. Rohr*, 385 Fed. Appx. 67, 70 (3d Cir. 2010)("judges are absolutely immunized from a suit for money damages arising from their judicial acts.")(citations omitted).

Based upon the above, we will recommend Plaintiff's Document 23 Amended Complaint be dismissed with prejudice and that the Court not allow Plaintiff Bianca Bucano to amend her Complaint for a second time with respect to any claims or relief requests against Defendant Judge Sibum, as we find it would be futile. *See Clark*, *supra*.; *Stankowski, supra*. *See also Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236. Also, we will recommend that Defendant Judge Sibum be dismissed entirely from this case with prejudice because, as detailed above, Plaintiffs have not stated any cognizable constitutional claim against her and because she is entitled to absolute judicial immunity from any monetary damages.

### B.    DOCUMENT 26 AMENDED COMPLAINT

#### 1.    Allegations

On July 24, 2012, Plaintiff Melissa Bucano filed a separate Document 26 Amended Complaint from her mother Plaintiff Bianca Bucano's Document 23 Amended Complaint. (3:12-CV-0606, Doc. 26). In her lengthy, twenty (20) page Document 26 Amended Complaint, Plaintiff

Melissa Bucano recounted at length the circumstances and court proceedings that led to her Monroe County Court criminal conviction and confinement. (3:12-CV-0606, Doc. 26, pp. 4-7). To summarize, Plaintiff Melissa Bucano alleges that she was prevented from accepting an original plea deal despite her attempts to accept it, after initially denying this original plea deal, and coerced to accept a second plea deal by her attorneys and Judge Sibum despite her alleged attempts to have her plea withdrawn, which resulted in her subsequent conviction and current confinement. (*Id*.). Plaintiff also states that her bail was revoked on the recommendation of prosecuting Deputy PA Attorney General Mark Bellavia on the grounds that: (1) she was a flight risk, even though Plaintiff alleges that she had cooperated with the authorities and appeared before the Grand Jury as a witness and also appeared at every required court proceeding that followed the investigation; and (2) she was suicidal, a label she claims she wrongly earned because in the presence of the entire courtroom, she stated the metaphor that "over her dead body" would she accept a plea deal. (3:12-CV-0606, Doc. 26, pp. 2, 6-7).

Based on these facts, in her Document 26 Amended Complaint, Plaintiff Melissa Bucano raises the following constitutional claims under 42 U.S.C. § 1983, related to her prior confinement in MCCF when she was a pre-trial detainee: (1) a Fourteenth Amendment equal protection claim; (2) a Fourteenth Amendment conditions of confinement claim; and (3) a Fourteenth Amendment denial of medical care claim. (3:12-CV-0606, Doc. 26, pp. 2-3, 7-12). She also challenges the fact of her prior confinement in MCCF claiming that the Monroe County Court proceedings that led to her bail revocation and subsequent placement in the G-Unit of the Monroe County Corrections Facility were the result of a decision by a biased and partial judge, Defendant Judge Sibum. (3:12-

CV-0606, Doc. 26, p. 9).

Regarding her Fourteenth Amendment equal protection claim, Plaintiff Melissa Bucano seems to allege that she was discriminated against by Defendant Judge Sibum because she did not allow Plaintiff Melissa to accept her initial plea deal and receive probation like the other defendants in the criminal case, but instead forced Plaintiff Melissa to accept a second plea deal despite Melissa's attempts to have her plea withdrawn, which ultimately led to Melissa's confinement in MCCF. (3:12-CV-0606, Doc. 26, p. 3).

Regarding her Fourteenth Amendment confinement claim, Plaintiff Melissa Bucano alleges that she was erroneously placed in the Monroe County Corrections Facility G-Unit on suicide watch based on her "over my dead body" statement made in Monroe County Court, and that while in the G-Unit, she was deprived of her glasses which rendered her unable to see anything more than "a fuzzy blur," she was left in her cell for at least twenty-three (23) hours a day, was denied requests to shower, lived in a "filthy cell with feces on the walls," was not provided with slippers, socks, undergarments or toilet paper, was forced to use the bathroom in front of others, and was not able to eat certain foods because they were not kosher (Plaintiff is Jewish). (3:12-CV-0606, Doc. 26, pp. 7-8).

Regarding her denial of medical care claim, Plaintiff Melissa Bucano alleges that she was denied her glasses which rendered her unable to see more than "a fuzzy blur." (3:12-CV-606, Doc. 26, p. 7).

Regarding the challenge to the very fact of her confinement in MCCF, Plaintiff Melissa Bucano states that Defendant Judge Sibum lacked impartiality in presiding over the Bucano case,

and that her bias and lack of impartiality is why Plaintiff Melissa Bucano and her mother were convicted and are currently confined. Plaintiff points to several instances that portray Defendant Judge Sibum's bias against her, including Defendant Judge Sibum's alleged act of not allowing Plaintiff to accept the initial plea deal that would place Plaintiff Melissa Bucano on probation rather than sending her to jail, ignoring Plaintiff Melissa Bucano's alleged attempts to have the second plea deal that would send Melissa to prison withdrawn, ignoring her attempts to prove that she is not a flight risk in order for Melissa to be able to post bail while she awaited trial, and Defendant Judge Sibum's alleged mockery of Plaintiff Melissa Bucano's "suicidal" tendencies stemming from past sexual abuse at the hands of her father. (3:12-CV-0606, Doc. 26, pp. 9-11).

As relief, Plaintiff Melissa Bucano prays for the following: "I am seeking damages of $5,000,000.00. Also, I want immediate release under the revised plea agreement the Attorney General had approved sometimes in March 2012." (3:12-CV-0606, Doc. 26, p. 3).

Lastly, we note that Plaintiff Melissa Bucano states that she has not filed a grievance concerning the facts related to her Amended Complaint because she "asked Sgt. for grievance forms, but was told [she] could not have any" after answering questions as to why she wanted the forms and about whom she would be filing the grievance. (3:12-CV-0606, Doc. 26, p. 1).[4]

_____

[4]As noted above, prior to filing a civil rights action in federal court, an inmate must utilize the grievance procedure available in the prison. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Spruill v. Gillis*, 372 F. 3d 218, 222 (3d Cir. 2004); *Jones v. Bock*, 549 U.S. 199, 215 (2007). It does not appear from Plaintiff Melissa Bucano's Doc. 26 Amended Complaint that she fully exhausted all of her administrative remedies available at MCCF with respect to her claims which challenge the conditions of confinement at MCCF.

**2.     Discussion**

To reiterate, the Court issued an Order in Civil No. 12-0606, on June 25, 2012, permitting Plaintiffs to file an Amended Complaint, stating the following, in part:

2.      Plaintiffs' Complaint (Doc. 1) is dismissed without prejudice on their claims regarding Plaintiff Melissa Bucano's confinement and medical needs, and Plaintiff Bianca Bucano's confinement;

3.      Plaintiffs' Complaint (Doc. 1) is dismissed with prejudice in all other respects;

4.      This determination means that all Defendants other than Judge Sibum are dismissed from this action with prejudice; the confinement claim regarding Melissa Bucano is dismissed against Judge Sibum without prejudice; all other claims against Judge Sibum are dismissed with prejudice;

5.      If they choose to do so, Plaintiffs may file an amended complaint consistent with this Order and the simultaneously filed Memorandum on or before July 13, 201[2], and failure to do so will result in dismissal of this case;

(3:12-CV-0606, Doc. 20, p. 1).

Therefore, Plaintiffs were permitted to amend their Complaint based only on their Eighth Amendment confinement and medical care claims.

In examining Plaintiff Melissa Bucano's Document 26 Amended Complaint, to the extent that Plaintiff Melissa Bucano is challenging the fact or length of her or her mother Plaintiff Bianca Bucano's incarcerations, the legality of their present confinement, and that violations of their constitutional rights occurred during the Monroe County Court criminal proceedings against them, these are claims that: (1)are barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), until Plaintiffs can show that their Monroe County Court convictions and sentences have been invalidated or overturned *via* the state court appeals process; or (2) are properly raised in habeas petitions under 28 U.S.C. § 2254 after Plaintiffs exhaust their state court appellate remedies. *See*

*Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011)(The *Heck* favorable termination rule applies to §1983 civil rights actions); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973)( The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his or her conditions of confinement violate the constitution, but is not challenging the fact or length of his or her custody); *see also Muhammad v. Close*, 124 S. Ct. 1303, 1304 (2004) (Per Curiam); *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002)(a §1983 action is not the appropriate action for claims challenging bail, a conviction and/ or a sentence).

The Third Circuit in *Leamer v. Fauver*, 288 F. 3d at 542, stated:

> whenever the challenge ultimately attacks the 'core of habeas' -- the validity of the continued conviction or the fact or length of the sentence -- a challenge, however denominated and <u>regardless of the relief sought,</u> must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate. (Emphasis added).

Plaintiffs can file  petitions for writ of habeas corpus under 28 U.S.C. §2254, challenging their convictions and sentences after they exhaust their state court remedies, insofar as they contend that their confinement in prison is unlawful.  *See Defoy v. McCullough*, 393 F.3d 439, 441-442 (3d Cir. 2005).  Therefore, we will recommend that Plaintiff Melissa Bucano's Document 26 Amended Complaint claims that challenge her and her mother Plaintiff Bianca Bucano's fact, length and legality of their confinement be dismissed with prejudice because these claims are *Heck* barred, and are not claims proper for a § 1983 action, but rather should be raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

19

To the extent that Plaintiff Melissa Bucano is raising claims under the Fourteenth Amendment against Defendant Judge Sibum and is seeking monetary damages, we will recommend that these claims against this Defendant be dismissed with prejudice. We find that Plaintiff Melissa Bucano's claims against the Judicial Defendant in this case are barred based on the doctrine of Judicial Immunity. We find that the Eleventh Amendment of the United States Constitution protects Defendant Judge Sibum from suit in federal court because Plaintiff Melissa Bucano clearly sues Defendant Judge Sibum entirely for decisions that were made while acting in her judicial capacity during Plaintiffs' Bianca and Melissa Bucano's Monroe County Court criminal cases, such as setting the amount of Plaintiffs' bail.     *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa. 2007); *Clark v. Conahan*, 737 F.Supp. 2d 239, 255-56 (M.D. Pa. 2010); *Dougherty v. Snyder*, 2011 WL 1871226, *13; *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 696 W.D. Pa. 2009).

Plaintiff Melissa Bucano's Document 26 Amended Complaint against Defendant Judge Sibum seeks to redress actions taken and decisions rendered by Judge Sibum within her jurisdiction and within her official judicial capacity in her courtroom in Monroe County, seemingly during the Plaintiff Bianca and Melissa Bucano's pre-trial matters in their criminal cases and in Bianca's civil cases against Alvin Walker, Safeco Insurance Company and against her ex-husband for child support.  As such, Defendant Judge Sibum is entitled to absolute judicial immunity.

In *Clark*, 737 F.Supp. 2d at 256, the Court stated:

> For judicial immunity to apply, only two requirements must be met: 1) jurisdiction over the dispute, and 2) a judicial act. *Id*. at *7. As to the first, a judge is not immune only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation

omitted). As to the second prong, judicial immunity extends only to "judicial acts," not administrative, executive, or legislative ones. *Id.* at 360–61, 98 S.Ct. 1099. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump,* 435 U.S. at 356, 98 S.Ct. 1099 (citation omitted). The fact that the judge was incorrect about the status of jurisdiction or that there were procedural errors causing the judge to act without jurisdiction does not satisfy the requirements for defeating immunity. *Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 771 (3d Cir.2000). In determining whether an act is judicial, it is appropriate to consider 'the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge,' and 'the expectations of the parties, *i.e.,* whether they dealt with the judge in his official capacity.' " *Wallace,* 2009 WL 4051974, at *7 (quoting *Stump,* 435 U.S. at 362, 98 S.Ct. 1099). "Acts which are traditionally done by judges include issuing orders, resolving cases and controversies, making rulings, and sentencing criminal defendants. Other actions such as sending a fax, or hiring and firing subordinates, have been found to be administrative, rather than judicial, acts. Note, however, that even if an act is not judicial, there may be still be immunity if the act is legislative or executive in nature." *Id.*

We find that Defendant Judge Sibum, who presided over Plaintiffs Bianca and Melissa Bucano's pre-trial matters in their Monroe County Court criminal cases and who presided over Bianca's civil cases, is entitled to absolute judicial immunity with respect to all of Plaintiff's damages claims against her. We find that Plaintiff Melissa Bucano's present claims raised in her Document 26 Amended Complaint against Defendant Judge Sibum, as detailed above, relate to the performance of her judicial duties in handling their pre-trial matters and related court matters against Plaintiffs, such as the amounts of their bail, and that these claims against this Judicial Defendant are precluded by absolute judicial immunity. *See Stankowski*, 487 F. Supp. 2d 543; *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *7 (M.D. Pa.); *Rush v. Wiseman*, 2010 WL 1705299, *7; *Clark*, 737 F.Supp. 2d at 256; *Dougherty v. Snyder*, 2011 WL 1871226, *13; *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d at 696; *Brookhart v. Rohr*, 385 Fed. Appx. 67, 70 (3d Cir. 2010)("judges are absolutely immunized from a suit for money

damages arising from their judicial acts.")(citations omitted).

Next, to the extent that Plaintiff Melissa Bucano is alleging that Defendant Judge Sibum violated her Fourteenth Amendment equal protection rights, we do not find that Plaintiff states a cognizable claim.  As mentioned, Plaintiff Melissa Bucano merely insinuates that she is being discriminated against by Defendant Judge Sibum based on Defendant Sibum's alleged bias against her and her mother Plaintiff Bianca Bucano.  (3:12-CV-0606, Doc. 23, pp. 2-3, 7-11).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 Fourteenth Amendment equal protection claim require Plaintiffs to state Defendants intended to discriminate against them, and later to prove this by either direct or circumstantial evidence.  *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976).  *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination.  *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984).  It is

well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving: (1) discrimination on the basis of race, religion, gender, alienage or national origin; (2) the violation of fundamental rights; and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

While Plaintiff Melissa Bucano has alleged facts from which it can be concluded that she and Plaintiff Bianca Bucano are a members of a protected class, *i.e.* based on their gender, she has not alleged that Defendant Sibum engaged in intentional or purposeful discrimination based on her or her mother Plaintiff Bianca Bucano's gender. Also, Plaintiff Melissa Bucano does not allege that Defendant Judge Sibum treated either she or her mother Plaintiff Bianca Bucano differently by than

similarly-situated persons on the basis of their race, religion, gender, alienage or national origin. In short, Plaintiff Melissa Bucano does not allege that others similarly situated were treated differently during their criminal cases in Monroe County Court or that they were treated differently than other pre-trial inmates at MCCF based on their race, religion, gender, alienage or national origin.

Plaintiff Melissa Bucano does not even implicate that a violation of a fundamental right occurred because, as discussed below, she had no right to a specific amount of bail and no right to be housed in any particular Unit at MCCF. *See Wilson v. Horn*, *supra*. Thus, we find that there is no cognizable equal protection claim stated by Plaintiff Melissa Bucano in her Document 26 Amended Complaint.[5] Therefore, we shall recommend that Plaintiff Melissa Bucano's Fourteenth Amendment equal protection claim against Defendant Judge Sibum be dismissed with prejudice as we find futility in allowing Plaintiff Melissa Bucano to amend this claim based on our above discussion.

Next, we turn to Plaintiff Melissa Bucano's Document 26 Fourteenth Amendment conditions of confinement claim. To reiterate, as stated above, in its Order issued on June 25, 2012, the Court

---

[5]The Court in *Porter v. Grace*, 2006 WL 680820, *2 (M.D. Pa.), considered an equal protection claim and stated:

> "An equal protection claim arises when an individual contends that he is receiving different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Sale School Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980). In as much as the Petitioner has not alleged that he was treated differently than others similarly situated, his equal protection claim must fail.

only permitted the Bucanos to amend the confinement conditions claims and medical care claims with relation to Plaintiff Melissa Bucano. (Doc. 20). Plaintiff's claims which challenge the conditions of confinement at MCCF can be asserted in a §1983 civil rights action. *See Muhammad v. Close*, 540 U.S. 749, 124 S. Ct. 1303, 1304 (2004 (Per Curiam); *Leamer v. Fauver*, 288 F. 3d at 542. The conditions of confinement that Plaintiff Melissa Bucano claims in her Document 26 Amended Complaint are as follows: (1) Judge Sibum ordered that Melissa be classified as suicidal, which led to her placement in MCCF's G Unit on suicide watch, based on her use of the metaphor "over my dead body" exclaimed in court in response to her attorney's request for her to enter a plea deal; and (2) Melissa claims she was denied basic needs such as a shower, clothing articles, and a cell free from feces. (3:12-CV-0606, Doc. 26, pp. 2-3, 7-11).

In *Tapp v. Proto*, 718 F.Supp. 2d 598, 616 (E.D. Pa. 2010), the Court stated that because the Plaintiff inmate was a pretrial detainee at the prison, his constitutional claims regarding the conditions of confinement and denial of proper medical care fell under the Fourteenth Amendment Due Process Clause. (citations omitted). Thus, because Plaintiff Melissa Bucano, in her Document 26 Amended Complaint, is alleging constitutional claims that arose when she and her mother Plaintiff Bianca Bucano were pretrial detainees at MCCF, her Document 26 Amended Complaint constitutional claims should be examined under the Fourteenth Amendment's due process standard. *Id*. at 621-22; *Brown v. Deparlos*, 2011 WL 1158289, *4 (M.D. Pa. 3-28-11)(Court held that if Plaintiff inmate was a pretrial detainee, his constitutional claims had to be considered under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment)(citations omitted). As the *Tapp* Court stated, "most Third Circuit decisions analyzing pretrial detainee claims

of inadequate medical care have used the Supreme Court's Eighth Amendment rubric set forth in *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285 (1976)."(footnote omitted). 718 F.Supp. 2d at 622; *Brown*, 2011 WL 1158289, *4. Thus, as in *Tapp* and *Brown*, we analyze Plaintiffs' Fourteenth Amendment claims of improper medical care and conditions of confinement under the Eighth Amendment standard used to evaluate such claims.

In *Caldwell v. Luzerne County Corrections Facility Management*, 2010 WL 3191855, *7 (M.D. Pa.), the Court stated that the "Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. The Eighth Amendment both restrains prison officials from applying excessive force against inmates, ..., and it imposes affirmative duties on prison officials to provide humane conditions of confinement, ... ." (internal citations omitted).

The Supreme Court has held that when an Eighth Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) *citing Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981). Furthermore, the Third Circuit defined deliberate indifference as "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir.

2001); *See also Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011). Furthermore, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violations of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

In applying Eighth Amendment analysis to Plaintiff Melissa Bucano's Fourteenth Amendment conditions of confinement claim, we do not find that she states any cognizable violations of her constitutional rights with respect to her claims which challenge the conditions of her prior confinement at MCCF. While Melissa alleges that she was denied basic human needs such as a shower, clothing articles and a feces-free cell, she does not allege personal involvement of the sole Defendant listed on her Amended Complaint, Defendant Judge Sibum, or any other prison officials, as required in order to properly raise a § 1983 claim.

Furthermore, with regards to Plaintiff Melissa's conditions of confinement allegation that she was improperly placed in the G Unit on suicide watch in violation of Fourteenth Amendment protections, Plaintiff Melissa Bucano has failed to properly allege a § 1983 claim because she has no constitutional right to confinement in any particular prison, facility or rehabilitative program, and, therefore, has no constitutional right to challenge her classification as "suicidal" and the her resulting placement in the G-Unit. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983). Additionally, the transfer of an inmate to a more restrictive prison does not violate the Due Process Clause "so long as the conditions of confinement do not otherwise violate the Constitution."

*Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532 (1976). Further, Melissa has no constitutional right to any particular classification or custody level in prison. *See Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997).

We also find that the Plaintiff Melissa Bucano is requesting relief in the form of Court intervention and management while she is in prison, *i.e.* directing how MCCF classified Melissa, directing MCCF what Unit to house Melissa in, and directing MCCF to take Melissa off suicide watch. The Court will not generally interfere with prison administration matters such as MCCF's decision as to what Unit is proper for Melissa. The Court should give significant deference to judgments of prison officials regarding prison regulations and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002); *See Levi v. Ebbert*, 2009 WL 2169171, *6 (M.D. Pa.).

Based upon the above, we will recommend that the Court dismiss with prejudice Plaintiff Melissa Bucano's Fourteenth Amendment equal protection and conditions of confinement claims as well as her claim that challenges the very fact, length and legality of her confinement. Also, we find that Defendant Judge Sibum should be dismissed entirely from this case with prejudice because, as detailed above, Plaintiff has failed for a second time to state any cognizable constitutional claim against her and because she retains judicial immunity under the Eleventh Amendment. Therefore, we find that the Court should not allow Plaintiff Melissa Bucano to amend her Complaint once again with respect to any claim or relief request against Defendant Judge Sibum because we find it would be futile. *See Clark, supra.*; *Stankowski, supra*. *See also Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### C. DOCUMENT 1, 3:12-CV-1450, COMPLAINT ALLEGATIONS AND DISCUSSION

#### 1. Allegations

On August 1, 2012, Plaintiffs filed, *pro se*, another joint Complaint which they incorrectly labeled as being against federal officials under *Bivens,* pursuant to 28 U.S.C. § 1331, against the following six (6) Defendants: (1) Monroe County Correctional Facility; (2) Sergeant Kramer; (3) Warden Asure; (4) Corrections Officer Viola; (5) Prime Care; and (6) Ms. Best. (3:12-CV-1450, Doc. 1, p. 1). As stated, Plaintiffs' Complaint filed under 3:12-CV-1450 was consolidated into Lead Case 3:12-CV-0606 by Order of the Court in Document 32, and because the two cases are now listed under 3:12-CV-0606, and because Plaintiff's filed a Motion to proceed *in forma pauperis* (Doc. 2), we are obliged to screen Plaintiffs' Document 1 Complaint (originally filed under 3:12-CV-1450) in accordance with the aforementioned PLRA standard of review**.** As stated, Plaintiffs' Complaint originally filed in Civil No. 12-1450 is a §1983 civil rights action since it alleges constitutional violations by state actors and state agencies.

In their 3:12-CV-1450 Complaint, Plaintiffs Bianca and Melissa Bucano allege an Eighth Amendment conditions of confinement claim, a Fourteenth Amendment equal protection claim, an Eighth Amendment denial of medical care claim, a First Amendment right to exercise religion claim, and a First Amendment retaliation claim. Plaintiffs claim that prison staff labeled them complainers and refused to give them grievance forms, and, therefore, Plaintiffs have not exhausted their administrative remedies during their prior confinement at MCCF. (3:12-CV-1450,

Doc. 1, p. 1).[6]

With regards to their conditions of confinement claim under the Eighth Amendment, Plaintiffs state instances when they allege their constitutional rights were violated. Plaintiffs allege the following instances in MCCF violated their right to adequate confinement conditions: (1) Plaintiff Bianca Bucano was forced to sleep on a cot for two and a half (2 ½) weeks outside of a cell despite requests to be placed back in a cell; (2) both Plaintiffs were forced to eat non-kosher, water-saturated, variety-lacking food with no dessert as an option, despite Plaintiffs' repeated requests for edible, kosher food; (3) Plaintiffs also had to eat off of cracked food trays that left pieces of plastic behind to mingle in with the food, and Plaintiffs allege that when Defendant Ms. Best, who handles the food at MCCF, was made aware of the situation, she would make it worse, so Plaintiffs were forced to eat food with pieces of plastic in it; (4) both Plaintiffs have gone without legal resources and claim to have been forced to live in unsanitary and psychologically abusive conditions; and (5) when Melissa suffered a dizzy spell "the C.O. and Sgt. Screamed at Melissa to get up and move out of her mother's cell, as earlier in the day Melissa's allegedly kosher food was saturated in water and the C.O. tried to force Melissa to eat it. Melissa refused and the Deputy Warden ordered Melissa out of her mother's cell." (3:12-CV-1450, Doc. 1, pp. 2-4).

With regards to their denial of medical care claim under the Eighth Amendment, Plaintiffs allege that Defendant Prime Care has denied both Plaintiffs medical care. Defendant Prime Care

---

[6]It does not appear from Plaintiffs' 3:12-CV-1450 Complaint that they fully exhausted all of their administrative remedies available at MCCF with respect to their claims which challenge the conditions of their prior confinement at MCCF.

allegedly has refused to provide Plaintiff Bianca Bucano with the non-generic form of Synthroid for her hypothyroidism despite her insistence that her physician outside of the prison has prescribed the non-generic form for over twenty (20) years due to side effects Bianca Bucano had with the generic form. (3:12-CV-1450, Doc. 1, pp. 4-5). Bianca also claims that Prime Care has failed to provide adequate prescription drug treatment for her fibromyalgia, back problems, diabetes, and digestive issues (which resulted from a prescribed diabetes drug and was a problem of which she alerted Prime Care, but of which nothing was done to replace the diabetes drug). (3:12-CV-1450, Doc. 1, p. 2, 4-5).

Plaintiffs also allege that Defendant Prime Care has not provided Plaintiff Melissa Bucano with treatment for her "severe spinal pain" or her asthma, stating that even after Plaintiff went to the medical unit complaining of wheezing and chest pains, the nurse told her she would not give her any asthma medication because it was after nine o'clock at night. (*Id.*).

With regards to a seeming Fourteenth Amendment equal protection claim, Plaintiffs allege that they were treated differently from other inmates because: (1) the other inmates allegedly had a choice of seven (7) different foods, while Plaintiffs could choose from only four (4) foods; (2) Plaintiff Bianca Bucano had to sleep on a cot for over two (2) weeks, which is usually an arrangement used for intake, detox and suicide watch inmates; and (3) Plaintiffs were not allowed in a cell together, even though "other mother/ daughters, cousins, sisters, co-defendants can all ask to be in the same cell and are allowed, but my daughter and I are not because we wanted to file a grievance for inedible (sic) food." (3:12-CV-1450, Doc. 1, pp. 1-3).

With regards to their First Amendment right to religion claim, Plaintiffs allege that being forced to eat food that is not kosher, being prohibited from being in the same cell, and being called "fake Jews" by Corrections Officer Viola all violate their First Amendment right to practice Judaism. (3:12-CV-1450, Doc. 1, pp. 1-3).

With regards to their First Amendment retaliation claim, Plaintiffs allege that they feared that MCCF Defendants Sergeant Kramer, Deputy Warden, Corrections Officer Viola and Warden Asure would retaliate against them for asking for basic necessities such as clean and plentiful clothes, edible and kosher food, and more of a variety of foods to eat. (3:12-CV-1450, Doc. 1, p. 3).

As relief, Plaintiffs request that they be provided proper confinement conditions, medical care, and pain and suffering in the amount of one million dollars ($1,000,000.00). (3:12-CV-1450, Doc. 1, p. 3).

### 2. Discussion of Complaint filed in 3:12-CV-1450

### a. Defendants MCCF and Prime Care

Immediately, we will recommend that Defendants Monroe County Corrections Facility and Prime Care be dismissed with prejudice. With regards to MCCF, the law is well-settled that a prison is not a "person" that is subject to suit under §1983. *See Ayers v. Bradford County*, 2009 WL 801867, *5 (M.D. Pa. 3-25-09). In *Ayers*, the Court stated:

> Ayers is unable to maintain the action against BCCF [Bradford County Correctional Facility] because a prison or correctional facility is not a "person" that is subject to suit under federal civil rights laws. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109

S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see Slagle v. County of Clarion,* 435 F.3d 262, 264 n. 3 (3d Cir.2006) (affirming on other grounds and observing that "[t]he District Court dismissed Clarion County Jail as a defendant in this case, stating 'it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws' "); *Kelly v. York County Prison,* No. 08-1813, 2008 WL 4601797, at *2 (M.D.Pa. Oct.15, 2008) (noting that a "prison or correctional facility is not a person within the meaning of § 1983" and "the York County Prison is clearly not a person and may not be sued under § 1983"). *Jackson v. Pennsylvania,* No. 08-1297, 2008 WL 4279544, at *1 (M.D.Pa. Sept.11, 2008) (holding that a county prison is not a "person" within the meaning of § 1983); *Meyers v. Schuylkill County Prison,* No. 04-1123, 2006 WL 559467, at *8 (M.D.Pa. Mar.7, 2006) (holding same). BCCF has no existence apart from the government and cannot be considered a person for purposes of maintaining a civil rights action.

*Id.*

Thus, we will recommend that Defendant MCCF be dismissed with prejudice from this action.

Furthermore, along the same rationale, Defendant Prime Care is not considered a "person" subject to suit under 42 U.S.C. § 1983, and, therefore, should be dismissed from the suit with prejudice as it is not a proper defendant. In *Martz v. SCI-Coal Township Therapeutic Community, et al.,* 2012 U.S. Dist. LEXIS 15821, *6 (M.D. Pa. Feb. 8, 2012), this Court stated the following:

The [Third Circuit] Court of Appeals in *Fischer* also recognized that a prison's medical department may not be sued under §1983 since it is not a person. *See Fischer,* 474 F.2d at 992; *see also Stanley v. Delaware Co. Medical Dept.,* 1991 U.S. Dist. LEXIS 2466, 1991 WL 29928 *1 (E.D. Pa. Feb. 27, 1991) (prison medical department clearly not a person for purposes of § 1983).

Therefore, Prime Care Medical is also not an appropriate Defendant, and we will respectfully recommend that this Defendant be dismissed with prejudice because a medical department, like a prison, is also not a "person" under §1983.

Furthermore, based upon the above, we find that the Court should not allow Plaintiffs to amend their Complaint with respect to their claims against Defendants MCCF and Prime Care , as they are not proper Defendants in this action and it would be futile to permit amendment as to these Defendants.  *See Ayers*, *supra; Grayson v. Mayview State Hospital*, 293 F.3d at 111;  *Alston v. Parker*, 363 F.3d at 235-236.

Further, we do not find that Plaintiffs have stated a constitutional claim against Monroe County under *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Thus, even if Plaintiffs named Monroe County as a Defendant in this case, and they did not, we find that Plaintiffs have not properly stated First, Eighth, or Fourteenth Amendment claims under *Monell* against this County. Monroe County cannot be held liable for the conduct of persons it supervises pursuant to *respondeat superior.  Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.).[7]  Rather, Monroe County "[is] subject to liability [in a §1983 action] to the extent [it] maintain[ed] an unconstitutional custom or policy that caused the alleged constitutional violation."  *Id.* (citation omitted).  In *Mangus v. DCP*, 2010 WL 521114, *3 (M.D. Pa.), the Court stated:

> With respect to such institutional defendants it is clear that:
>
> [A] County cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, [a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. *See*

[7]*See also Mangus v. DCP*, 2010 WL 521114, *8-*6 (M.D. Pa.).

*Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996).

*Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir.2000).

No such custom or policy is specifically alleged by Plaintiffs with respect to Monroe County. Plaintiffs do not make any allegations as described above against Monroe County necessary to make it subject to liability in this case. Based on *Malles and Meyers*, as well as *Magnus*, we find Plaintiffs' allegations do not sufficiently state that Monroe County caused any alleged unconstitutional conduct by having customs, policies, practices and procedures, and how these policies gave rise to violations of their constitutional rights.

### b.      Eighth Amendment Conditions of Confinement Claim

At the outset, we find that Plaintiffs clearly indicate in their Complaint originally filed in 3:12-CV-1450 that they did not exhaust their available administrative remedies at MCCF regarding each one of their constitutional claims. As stated, the Court consolidated Plaintiff's Complaint they filed in Civil No. 12-1450 with their Civil No. 12-0606 case. Plaintiffs admit that MCCF has a grievance procedure and that they did not file a grievance regrading their claims raised in their Civil No. 12-1450 Complaint, and that the grievance process is not completed. However, Plaintiffs state that they request the Court to direct MCCF officials to give them the grievance documents, and that MCCF staff labeled them as complainers and would not give them grievance forms. *See* page 1 of Plaintiffs' Civil No. 12-1450 Complaint.

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). In screening Plaintiffs' Complaint under the PLRA, the Court can *sua sponte* dismiss without prejudice Plaintiffs'

action regarding their constitutional claims which are not yet exhausted because their Complaint make clear that they did not fully exhaust any of their constitutional claims arising at MCCF. *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

> In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:
>
> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. §1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*.

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell v. Dodrill*, 696 F.Supp.2d 454 (M.D. Pa. 2010); *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). Initially, the issue of whether Plaintiff fully exhausted all of his DCP administrative remedies which were available to him is a question of law for the Court to decide. *See Drippe v. Tobelinski*, 604 F. 3d 778, 782 (3d Cir. 2010)("exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge")(citation omitted). Also, "[t]he availability of administrative remedies to a prisoner is a question of law." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

In *Womack v. Smith*, 310 Fed. Appx. 547, 550 (3d Cir. 2009), the Court stated:

> The Prison Litigation Reform Act (PLRA), requires full and procedurally proper exhaustion of all available administrative remedies as a prerequisite to prisoner suits challenging prison conditions under federal law. 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004). "[P]rison grievance procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231.

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner

may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 465 (M.D. Pa. 2010), stated:

> The United States Court of Appeals for the Third Circuit has not issued a precedential opinion on the issue. However, in a non-precedential opinion, the Court found that the lower court had properly dismissed the plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not precedential). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Id.* (quoting *Johnson,* 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9; *Freeman v. DOC*, 2011 WL 718615, *3 (M.D. Pa. Feb. 22, 2011)("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action *Ahmed v. Sromovski*, 103 F.Supp. 2d 838, 843 (E.D. Pa. 2000."). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

Based on our prior cases involving MCCF, we take judicial notice that MCCF had an administrative remedy policy during the relevant times of this case. In fact, Plaintiffs admit that MCCF had a grievance procedure. As stated, Plaintiffs admit on the face of their instant Complaint originally filed under Civil No. 12-1450 that they did not fully exhaust their MCCF administrative remedies with respect to any of their constitutional claims. Plaintiffs aver that the staff at MCCF would not give them grievance forms. Plaintiffs do not state any steps they took to try and obtain grievance forms. In any event, as stated, there is no futility exception to the PLRA's exhaustion requirement. In fact, Plaintiffs had no difficulties in mailing out their various pleadings and filings to this Court when they were confined in MCCF.

Since Plaintiffs state in their Complaint that they request the Court to direct MCCF officials to give them the grievance documents, we will recommend that the Court direct MCCF officials to send Plaintiffs grievance forms and to allow Plaintiffs to file, *nunc pro tunc*, grievances regarding their constitutional claims raised in their Complaint originally filed in Civil No. 12-1450. We find that the PLRA's exhaustion requirement can be met in this case if the Court directs MCCF officials to send Plaintiffs grievance forms and to allow Plaintiffs to file, *nunc pro tunc*, grievances.

In *Cooper v. Sniezek*, 2010 WL 3528848, *7 (M.D. Pa. 9-7-10), the Court stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95

(S.D.N.Y.1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle*, 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir.2004).

The law is clear that Plaintiffs were required to exhaust their MCCF administrative remedies before they filed their instant action. *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, *3 (M.D. Pa.); *Freeman v. DOC*, 2011 WL 718615, *3. The law is also clear that Plaintiffs cannot complete exhaustion while their present action is pending with this Court. *Freeman v. DOC*, 2011 WL 718615, *3. Rather, Plaintiffs' instant cases must be dismissed and they can file one new action once they complete exhaustion. The Third Circuit stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (not precedential). The *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th

Cir. 2003)).

Accordingly, we will recommend that the Court direct MCCF officials to send Plaintiffs grievance forms and to allow Plaintiffs to file, *nunc pro tunc*, grievances regarding their constitutional claims raised in their Complaint originally filed in Civil No. 12-1450. We will also recommend that Plaintiffs' consolidated case, *i.e.*, Plaintiffs' Complaint originally filed in Civil No. 12-1450, be dismissed without prejudice for failure of Plaintiffs to complete the exhaustion of their MCCF administrative remedies.

Notwithstanding the apparent failure of Plaintiffs to have exhausted their administrative remedies at MCCF regrading any of their claims, we now discuss Plaintiffs' remaining constitutional claims raised in their Complaint originally filed in Civil No. 12-1450.

To reiterate, Plaintiffs raise Eighth Amendment conditions of confinement claims based on the following allegations: (1) Plaintiff Bianca Bucano was forced to sleep on a cot for two and a half (2 ½) weeks outside of a cell at the direction of Defendant Warden Asure despite requests to be placed back in a cell; (2) Defendants Asure, Best, Kramer and Viola left Plaintiffs with no choice but to eat non-kosher, water-saturated, variety-lacking food with no dessert as an option, despite Plaintiffs' repeated requests for edible food; (3) Plaintiffs also had to eat off of cracked food trays that left pieces of plastic behind to mingle in with the food, and Plaintiffs allege that when Ms. Best, who handles the food, and Defendant Kramer were made aware of the situation, Defendant Best would make the food worse and Defendant Kramer would respond with threatening remarks, so Plaintiffs were forced to eat food with pieces of plastic in it; (4) both Plaintiffs have gone without legal resources and claim to be forced to live in unsanitary and psychologically abusive conditions;

and (5) when Melissa suffered a dizzy spell "the C.O. and Sgt. screamed at Melissa to get up and move out of her mother's cell, as earlier in the day Melissa's allegedly kosher food was saturated in water and the C.O. tried to force Melissa to eat it. Melissa refused and the Deputy Warden ordered Melissa out of her mother's cell." (3:12-CV-1450, Doc. 1, pp. 2-4).

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> "The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society. *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).
>
> To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each would not
> do so alone, but only when they have a mutually enforcing
> effect that produces the deprivation of a single, identifiable human
> need such as food, warmth, or exercise-for example, a low cell
> temperature at night combined with a failure to issue blankets.
> To say that some prison conditions may interact in this fashion is a
> far cry from saying that all prison conditions are a seamless web
> for Eighth Amendment purposes. Nothing so amorphous
> as "overall conditions" can rise to the level of cruel and unusual
> punishment when no specific deprivation of single human need
> exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of
> serious harm, the inmate must show that the person or persons
> responsible for the conditions of confinement acted with
> "a sufficiently culpable state of mind." *Id. at 298.* As described
> by the Supreme Court in *Farmer,* the standard for
> determining deliberate indifference in a conditions of confinement
> case is whether a prison official knew of and disregarded an excessive
> risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The
> Court added that "it is enough that the official acted or failed to
> act despite his knowledge of a substantial risk of harm." *Id.* at 842.

We find that, based on the aforementioned confinement conditions instances and allegations, Plaintiffs have sufficiently stated the personal involvement of Defendants Sergeant Kramer, Corrections Officer Viola, Deputy Warden Asure and Ms. Best with respect to their Eighth Amendment conditions of confinement claims. *See Carpenter,* 2011 WL 995967, *6.

However, in examining the facts alleged by Plaintiffs in relation to their Eighth Amendment confinement conditions claims, it is apparent that Plaintiffs have not properly stated cognizable claims. As stated, in order to properly allege a conditions of confinement claim, a plaintiff must allege the following: (1) that she was deprived of the minimal civilized measure of life's necessities; and (2) that the person causing the deprivation had knowledge of or was aware of a substantial risk of harm to the plaintiff. Plaintiffs have properly alleged the first prong of a conditions of confinement claim because they allege that they were forced to eat water-saturated, plastic-laden food, which we find is a deprivation of the minimal civilized measure of life's necessity of food. However, Plaintiffs have failed to properly allege the second prong of a conditions of confinement claim because Plaintiffs have not provided facts that tend to prove that Defendants Kramer, Asure, Viola and Best knew of a substantial risk of harm to Plaintiffs because Plaintiffs failed to allege that Defendants knew that there was a serious risk of harm to being forced to eat water-saturated food, and also failed to allege that Defendants had knowledge that there was plastic from the broken trays in their food.

Therefore, we will recommend that Plaintiffs' Eighth Amendment conditions of confinement claims be dismissed without prejudice, since we find that allowing Plaintiffs to amend their Complaint would not be futile. *See Clark*, *supra*.; *Stankowski, supra*. *See also Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### c.     Eighth Amendment Denial of Medical Care Claims

Plaintiffs allege that Defendant Prime Care has denied both Plaintiffs medical care in violation of the Eighth Amendment. Defendant Prime Care and the "jail" allegedly have refused

to provide Plaintiff Bianca Bucano with the non-generic form of Synthroid for her hypothyroidism despite her insistence that her physician outside of the prison has prescribed the non-generic form for over twenty (20) years due to side effects Bianca Bucano had with the generic form. (3:12-CV-1450, Doc. 1, pp. 4-5). She also alleges that the "doctor" has failed to provide treatment for her toe fungus, which she claims is a problem she has dealt with for over seven months. (*Id.*). Bianca also claims that she has not received treatment for her fibromyalgia, back problems, diabetes, and digestive issues (which resulted from a prescribed diabetes drug and was a problem of which she alerted Prime Care, but of which nothing was done to replace the diabetes drug). (3:12-CV-1450, Doc. 1, p. 2, 4-5).

Plaintiffs also allege that Plaintiff Melissa Bucano has not received treatment for her "severe spinal pain" or her asthma, stating that even after Plaintiff went to the medical unit complaining of wheezing and chest pains, the nurse told her she would not give her any asthma medication because it was after nine o'clock at night. (*Id.*).

The first issue evident with Plaintiffs' denial of medical care claims is that they fail to allege personal involvement of a defendant, as required to allege a § 1983 claim. In alleging their denial of medical care claims, Plaintiffs assert them against Defendant Prime Care, the "jail," the "doctor," and the "nurse." As discussed, Defendants Prime Care and MCCF are not considered "persons" for purposes of a § 1983 action, and, therefore, any claims alleged against these two Defendants should be dismissed with prejudice. With regards to their denial of medical care claims against the "doctor," and "nurse," use of these generic terms is not enough to allege personal involvement of any one Defendant who Plaintiffs have named in their Complaint.

Furthermore, even if Plaintiffs had alleged personal involvement of a proper defendant, they have failed to properly allege an Eighth Amendment denial of medical care claim. The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to successfully raise an Eighth Amendment medical care claim, a plaintiff inmate must allege that the defendant was deliberately indifferent to plaintiff's serious medical needs. *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.) (quoting *Monmouth Cty. Corre. Inst. Inmates v. Lanzaro*, 834 F. 2d 326, 346 (3d Cir. 1987)).

According to the Court in *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.), a prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of and disregards an excessive risk to inmate health or safety." (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). According to the Supreme Court in *Estelle*, negligently diagnosing or treating a medical condition does not amount to an Eighth Amendment violation of an inmate's right to medical care/ treatment. *Estelle,* 429 U.S. at 106.

Furthermore, according to the *Williams* court,

> A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. . . [I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.

2008 WL 4453100, *7 (M.D. Pa.) (citing *Monmouth Ct. Corr. Inst. Inmates*, 834 F.2d at 347); See also *Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008).

Applying these principles to the above-detailed allegations Plaintiffs assert against Defendant Prime Care, the jail, doctor and nurse, we find that, even if Plaintiffs had named a proper defendant regarding their denial of medical care claims, which they have not, Plaintiffs have failed to allege an Eighth Amendment denial of medical care claim because Plaintiffs have not alleged that Prime Care, the jail, doctor or nurse acted with deliberate indifference to the serious medical needs of either Plaintiff. Furthermore, even if Plaintiffs had used the buzz words "deliberate indifference," merely using the words "deliberate indifference" in an Eighth Amendment denial of medical care claim does not in and of itself satisfy the deliberate indifference standard.

In *Mimms v. U.N.I.C.O.R.*, 2010 WL 2747470, *2 (3d Cir.), the Court dismissed the defendant's Eighth Amendment medical care claim, stating:

> [Defendant] did not satisfy the standard for deliberate indifference. According to Mimms' own allegations, he received immediate medical care, and he did not specify what treatment, if any, he was denied. Although he claimed that he experienced continuing pain, the District Court properly noted that he did not allege that the pain was severe or that he informed prison officials about the pain and was denied treatment.

In this case, Plaintiff Bianca Bucano alleges that the prescription drug treatments she received for her hypothyroidism and diabetes were inadequate. (3:12-CV-1450, Doc. 1, pp. 4-5). However, Plaintiff alleges only that her care was inadequate because Plaintiff was receiving treatment for these conditions, just not to her satisfaction. As we have mentioned, inadequacy of medical care does not amount to the deliberate indifference needed to properly raise an Eighth Amendment denial of medical care claim.

Additionally, according to the Middle District of Pennsylvania in *Robinson v. U.S.*, 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment ] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County,* 912 F.Supp. 809, 815 (M.D.Pa.1996) (citing *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979), quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)). When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean,* 897 F.2d 103, 108-10 (3d Cir.1990).

Therefore, because Plaintiffs do not assert their denial of medical care claims against a proper defendant, because Plaintiffs have not properly stated a denial of medical care claim since they have failed to allege that any Defendant acted with deliberate indifference to the serious medical needs of either Plaintiff, and because their Complaint seems to be aimed at the adequacy of the medical care received, rather than allegations of deliberate indifference to a serious medical condition, Plaintiffs have failed to properly state an Eighth Amendment denial of medical care claim. Therefore, based on the above discussion, we will recommend that Plaintiffs' Eighth Amendment denial of medical care claims be dismissed without prejudice since we find that leave to amend these claims may not be futile. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### d. Fourteenth Amendment Equal Protection Claim

With regards to a seeming Fourteenth Amendment equal protection claim, Plaintiffs allege that they were treated differently from other inmates because: (1) the other inmates allegedly had a choice of seven (7) different foods, while Plaintiffs could choose from only four (4) foods; (2) Plaintiff Bianca Bucano had to sleep on a cot for over two (2) weeks, which is usually an arrangement reserved for intake, detox and suicide watch inmates; and (3) Plaintiffs were not allowed in a cell together, even though "other mother/ daughters, cousins, sisters, co-defendants can all ask to be in the same cell and are allowed, but my daughter and I are not because we wanted to file a grievance for inedible (sic) food."  (3:12-CV-1450, Doc. 1, pp. 1-3).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 Fourteenth Amendment equal protection claim require Plaintiffs to state Defendants intended to discriminate against them, and later to prove this by either direct or circumstantial evidence.  *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976).  *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving: (1) discrimination on the basis of race, religion, gender, alienage or national origin; (2) the violation of fundamental rights; and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

While Plaintiffs have alleged facts from which it can be concluded that they are members of a protected class, *i.e.* based on their gender, they have not alleged that any particular Defendant engaged in intentional or purposeful discrimination based on either Plaintiff's gender. Also, Plaintiffs do not allege that either one was treated differently by any particular Defendant than similarly-situated persons on the basis of their race, religion, gender, alienage or national origin. In short, Plaintiffs do not allege that others similarly situated were treated differently than other inmates at MCCF based on their race, religion, gender, alienage or national origin.

Thus, we find that there is no cognizable equal protection claim stated by Plaintiffs in their Document 1 Complaint originally filed in Civil No. 12-1450. Therefore, we will recommend that Plaintiffs' Fourteenth Amendment equal protection claim against Defendants be dismissed with prejudice since we find futility in allowing Plaintiffs to amend this claim based on our above discussion and based on the failure of Plaintiffs to state such a claim in both their initial Complaint and Amended Complaints filed in Civil No. 12-0606. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### e.      First Amendment Right to Exercise Religion Claim

With regards to their First Amendment right to exercise religion claim, Plaintiffs allege that being forced to eat food that is not kosher, being prohibited from being in the same cell, and being called "fake Jews" by Corrections Officer Viola violate their First Amendment right to exercise religion, namely Judaism. (3:12-CV-1450, Doc. 1, pp. 1-3).

In *Branch v. Russian*, 2005 WL 1137879, * 7 (M.D. Pa.), this Court stated:

Individuals have a constitutionally protected right to follow the
religious teachings and practices of their choice. *Employment Div. v.
Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876
(1990). This right may be limited by law of general applicability,
restricting both religious and non-religious conduct, but reasonable
accommodations for religious observance may be required in
certain circumstances. *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205,
214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Particularly in the
prison context, where inmates are precluded from engaging in a
variety of otherwise permissible activities, officials may be
required to provide exemptions from restrictions that place a
"substantial burden" on an inmate's adherence to "sincerely held
religious beliefs," unless the officials offer compelling reasons for
refusing such accommodation. *See* 42 U.S.C. § 2000cc-1(a);
*see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Hennis v. Tedrow*, 2011 WL 1230337, *10 (W.D. Pa. 3-31-11), the Court stated:

"The mere assertion of a religious belief does not automatically
trigger First Amendment protections, however. To the contrary, only those
beliefs which are both sincerely held and religious in nature are
entitled to constitutional protection." *DeHart v. Horn*, 227 F.3d 47, 51
(3d Cir.2000); *see also Sutton v. Rasheed,* 323 F.3d 236, 250–51
(3d Cir.2003).

Once a sincerely held religious belief has been demonstrated, an inmate may
show that a prison regulation or practice violates the right to free exercise
of religion by showing that it does not pass the "reasonableness test" set
forth in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987),
and *O'Lone,* 482 U.S. at 349. This test examines the following four
factors: (1) whether the regulation or practice in question furthers a
legitimate governmental interest unrelated to the suppression of

expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 415–18, 109 S.Ct. 1874, 104 L.Ed.2d 459; *Turner,* 482 U.S. at 89–91. These standards indicate that "when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest." *Ramzidden v. Monmouth County Sheriff Dept.,* No. 09–4829, 2010 WL 1752540, at *11 (D.N.J. Apr.30, 2010). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, *Thornburgh,* 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. *Williams v. Morton,* 343 F.3d 212, 217 (2003) (citing *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)).

In analyzing the aforementioned case law and four factors provided by the Supreme Court in relation to the facts Plaintiffs have alleged, while Plaintiffs have demonstrated a sincerely held religious belief of Judaism, Plaintiffs have failed to allege that the prison has a regulation or practice in place that violates Plaintiffs' right to freely exercise their religion. Therefore, because Plaintiffs have not alleged that the prison has a regulation or practice that would infringe on their right to practice Judaism, it is unnecessary to delve into the aforementioned "reasonableness test" set forth in *Turner v. Safley*. However, we do not find futility in allowing Plaintiffs to amend their First Amendment right to exercise religion claim, and, therefore, will recommend that this claim be dismissed without prejudice. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v.*

*Parker*, 363 F.3d at 235-236.

### f.    First Amendment Retaliation Claim

With regards to their First Amendment retaliation claim, Plaintiffs allege that they feared that Defendants Sergeant Kramer, Deputy Warden, Corrections Officer Viola and Warden Asure would retaliate against them for requesting basic necessities such as clean and plentiful clothes, edible and kosher food, and more of a variety of foods to eat.  (3:12-CV-1450, Doc. 1, p. 3).

In *White v. Napoleon*, the Third Circuit held that "[r]etaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution."  897 F.2d 103, 111-12 (3d Cir. 1990).  In order to prevail on a retaliation claim, a plaintiff must prove:

> (1) he was engaged in a constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.

*Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (*quoting Allah v. Seiverling*, 229, F.3d 220, 225 (3d Cir. 2000).

In examining Plaintiffs' retaliation claim in light of the aforementioned case law, it is evident that Plaintiffs have not properly alleged a First Amendment retaliation claim because: (1) they have not alleged that they were engaged in a constitutionally-protected activity; (2) they have not alleged that they suffered an adverse action at the hands of a state actor "sufficient to deter a person of ordinary firmness from exercising her constitutional right"; and (3) they have not alleged that a protected activity was a substantial or motivating factor in the state actor's decision to take adverse

action. The only statement made by Plaintiffs in their Complaint in relation to a retaliation claim is as follows: " . . . other inmates were violated by retaliation of Sgt. Kramer, Deputy Warden, C.O. Viola and Warden Asure to remove us for our right to ask for things that are our right (i.e. clean clothes, enough clothes, edible kosher sealed food (not rotten), cake, chips, cookies . . . ." (3:12-CV-1450, Doc. 1, p. 3). This statement surely does not provide enough factual information in order for the Court to conclude that Plaintiffs have properly alleged the three prongs necessary to raise a First Amendment retaliation claim as described in *Rauser*. Therefore, we will recommend that Plaintiffs' First Amendment retaliation claim be dismissed without prejudice as we do not find futility in allowing Plaintiffs to amend their Complaint. *See also Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

## IV. DOCUMENT 29 MOTION FOR R.O.R. BAIL PENDING APPEAL.

On July 19, 2012, Plaintiffs filed a lengthy 16-page Motion for R.O.R. Bail Pending Appeal. (Doc. 29). To summarize, Monroe County Court of Common Pleas Judge Sibum revoked Plaintiffs' R.O.R. (Revocation on own Recognizance) bail and set bail at twenty thousand dollars ($20,000.00) which lead to Plaintiffs' prior confinement at MCCF. (Doc. 29, p. 1). Plaintiffs allege that Judge Sibum revoked their R.O.R. bail "to prevent them [from preparing] for a fair trial, allowing biased jurors and denying crucial evidence and witnesses for a not guilty defense and outcome." (*Id.*). Plaintiffs aver that they were not flight risks because they have family and own real estate in the community. (*Id.*). They also aver they are non-violent. (*Id.*). Plaintiffs argue that they need to be on house arrest, and not in prison, in order to properly prepare for their state court appeals. (Doc. 29, p. 2). As stated above, Plaintiffs are no longer confined in MCCF and are serving their Monroe

County sentences in SCI-Muncy (Bianca) and SCI-Cambridge Springs (Melissa).

However, Plaintiffs' instant request for this Court to intercede in their state court proceedings and grant R.O.R. bail pending their on-going appeals process is precluded by the *Younger v. Harris*, 437 U.S. 37 (1971), abstention doctrine. In *Leer Elec., Inc. v. Com. of Pa.*, 2008 WL 5378284, *4 (M.D. Pa.), the Court stated:

> In *Younger v. Harris,* the United States Supreme Court established an abstention doctrine by holding that federal courts may not enjoin pending state criminal proceedings. 437 U.S. 37 (1971). In the line of cases that followed *Younger,* the Supreme Court made it clear that this doctrine of abstention is not specific to criminal matters, but also applies to state civil court and administrative proceedings. *See Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (holding that federal courts may not enjoin state civil proceedings between private parties); *Ohio Civil Rights Commn. v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (holding that federal courts may not enjoin state administrative proceedings when important state interests are involved); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (first applying *Younger* to state administrative proceedings). "The *Younger* doctrine ... reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (citing *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)). *Younger* abstention is appropriate when three requirements are satisfied. *See Middlesex,* 457 U.S. at 432 (collecting and summarizing authorities to establish a three part test). First, the federal plaintiff must be a party in an ongoing state proceeding of a judicial nature subject to interference by continued federal court action. Second, the state proceeding must implicate important state interests. And third, the federal plaintiff must have an adequate opportunity to raise constitutional challenges in the state court proceedings.

We find that the pending state court appeals proceedings involving Plaintiffs regarding their convictions and sentences in Monroe County Court satisfy the three requirements of *Younger* abstention. Plaintiffs are clearly parties in an ongoing state court action and this is a proceeding of a judicial nature subject to interference by the federal court. The state court appeals proceedings clearly implicate important state interests because the state has a legitimate governmental interest in preventing insurance fraud and in handling appeals of Defendants convicted in state court. Finally, Plaintiffs will have an adequate opportunity to raise their claims challenging their convictions in Monroe County Court and to seek bail pending their appeals in their state court proceedings during the appeals process.

Therefore, we find that Plaintiffs' case satisfies the three *Younger* abstention requirements and that the *Younger* abstention doctrine bars this Court from granting Plaintiffs' Document 29 Motion for R.O.R. Bail Pending Appeal, and, therefore, we will recommend that the Court deny Plaintiffs' Document 29 Motion.

Furthermore, to the extent that Plaintiffs are requesting that the Court act as an appellate tribunal over Monroe County Court Judge Sibum's decision to deny Plaintiffs R.O.R. bail, the *Rooker-Feldman* doctrine prevents the Court from acting as an appellate tribunal to a state court decision. This Court is not a state appeals court, and such requests of Plaintiffs are not properly before this Court. Plaintiffs can raise all of their present claims attacking Monroe County Court's Judge Sibum's denial of R.O.R. bail in their state court appeal proceedings. The federal Court is barred by the *Rooker-Feldman* doctrine from considering Plaintiffs' present Document 29 Motion.

As explained by the Court in *Stawarz v. Rojas*, 2007 WL 1653742, *5:

> The "fundamental principle of the *Rooker-Feldman* doctrine [is] that a
> federal district court may not sit as an appellate court to adjudicate appeals
> of state court proceedings." Port *Auth. Police Benevolent Assoc., Inc. v. Port
> Auth. of N.Y. and N.J. Police Dept.,* 973 F.2d 169, 179 (3d Cir.1992). The
> *Rooker-Feldman* doctrine is addressed to the Federal Court's subject
> matter jurisdiction. *Gentner v. Shulman,* 55 F.3d 87, 89 (2 Cir.1995) "federal
> district courts lack jurisdiction to review state court decisions whether
> final or interlocutory in nature."). In other words, a federal district court
> has no subject matter jurisdiction if it is called upon to essentially act as an
> appellate tribunal of a state court.

Thus, we find that Plaintiffs' Document 29 Motion should be denied because it is precluded by the *Rooker-Feldman* Doctrine. *Id*.

Therefore, because the Court is precluded from intervening in Plaintiffs' state court appeals proceedings, including their appeal regarding Judge Sibum's R.O.R. bail revocation decision, based on the *Younger* absention doctrine and *Rooker-Feldman* doctrine, we will recommend that the Court deny Plaintiffs' Document 29 Motion for R.O.R. Bail Pending Appeal.

**V.    RECOMMENDATION.**

Based on the above, it is respectfully recommended that Plaintiffs' Motions to Proceed *in forma pauperis* (**3:12-CV-0606, Docs. 3, 6, 16, 27 and 34; 3:12-CV-1450, Doc. 2** ) be granted. It is also recommended that Plaintiffs' Amended Complaints (**3:12-CV-0606, Docs. 23 and 26**)

be dismissed with prejudice as against all Defendants with respect to all of Plaintiffs' claims.[8]  It is also recommended that Defendants Monroe County Correctional Facility and Prime Care be dismissed with prejudice as they are not proper defendants in a § 1983 action.

Additionally, it is recommended that Plaintiffs' Complaint originally filed in **3:12-CV-1450, Doc. 1**, be dismissed in its entirety without prejudice due to Plaintiffs' admitted failure to have exhausted their administrative remedies at MCCF regarding any of their claims.  It is also recommended that the Court direct MCCF officials to send Plaintiffs grievance forms and to allow Plaintiffs to file, *nunc pro tunc*,  grievances regarding their constitutional claims raised in their Complaint originally filed in Civil No. 12-1450.

In the alternative, it is recommended that Plaintiffs' Complaint originally filed in **3:12-CV-1450, Doc. 1**, be dismissed without prejudice allowing Plaintiffs the opportunity to amend their Complaint with respect to their First Amendment right to exercise religion and retaliation claims, and  their Eighth Amendment denial of medical care and conditions of confinement claims.  It is recommend that Plaintiffs' Fourteenth Amendment equal protection claim be dismissed with prejudice.

---

[8]Pursuant to our above discussion, we find futility of any amendment of Plaintiffs' claims raised in their Amended Complaints **(3:12-CV-0606, Docs. 23 and 26)** against Defendants, and we shall not recommend Plaintiffs be granted leave to again amend their  pleadings with respect to any of their claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

Finally, it is recommended that Plaintiffs' **Document 29 Motion** for R.O.R. Bail Pending Appeal denied.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**



**Dated: December 27, 2012**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


BIANCA BUCANO, and : CIVIL ACTION NO. **3:CV-12-0606**

MELISSA BUCANO, :

      Plaintiffs : (Judge Conaboy)

       :

      v. : (Magistrate Judge Blewitt)

       :

JUDGE SIBUM, *et al.*, :

       :

      Defendants :


## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 27, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing

requirements set forth in Local Rule 72.2 shall apply.  A judge shall

make a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection

is made and may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


                    **s/ Thomas M. Blewitt**

                    **THOMAS M. BLEWITT**

                    **United States Magistrate Judge**


**Dated: December 27, 2012**