UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA BUCANO,                 :
                                :CIVIL ACTION NO. 3:13-CV-606
        Plaintiff,              :
                                :(JUDGE CONABOY)
            v.                  :(Magistrate Judge Mehalchick)
                                :
JUDGE JENNIFER SIBUM,           :
                                :
        Defendant.              :
                                :

_____

**MEMORANDUM**

Here we consider Magistrate Judge Karoline Mehalchick's Report
and Recommendation filed on December 30, 2013, in which she
recommends that the Court grant the Motion to Dismiss Plaintiff's
Amended Complaint Filed on Behalf of Judge Sibum (Doc. 59).  (Doc.
66.)  Plaintiff filed a "Response to Order" on January 14, 2014.
(Doc. 67.)  We construe this document in part as objections to the
Report and Recommendation.  For the reasons discussed below, we
adopt the Report and Recommendation (Doc. 66), grant Defendant
Sibum's motion (Doc. 59), and dismiss Plaintiff Melissa Bucano's
Amended Complaint (Doc. 26) with prejudice.

I. Background

Setting out concise background information in this case has
been an ongoing challenge due to the manner in which Plaintiff(s)
presented "factual" information to the Court throughout the
litigation.  For purposes of consideration of the pending Report
and Recommendation, we do not read Plaintiff Melissa Bucano's
Response to Order (Doc. 67) to lodge any specific objection to the

background provided by Magistrate Judge Mehalchick.  Therefore, we repeat that recitation here.

       Melissa Bucano appeared before Judge Sibum of the Monroe County Court of Common Pleas as a co-defendant in a criminal matter. (Doc. 26 at 2).  Bucano's surviving claims are based on the allegation that she was erroneously put on suicide watch by Judge Sibum.  (Doc. 26 at 7).  Bucano alleges that, after initially denying the original plea deal she was offered, she was prevented from accepting the original plea deal despite her attempts to do so.  She further alleges that her attorneys and Judge Sibum coerced her to accept a second plea deal, despite her alleged attempts to have her plea withdrawn, which resulted in her subsequent conviction and confinement.  (Doc. 26 at 4-7). Additionally, Bucano alleges that she was wrongfully labeled "suicidal" when she stated that "over her dead body" would she accept a plea deal.  (Doc. 26 at 2, 6-7).

       Bucano was housed in the G-unit of Monroe County Correctional Facility at the request of Judge Sibum.  (Doc. 26 at 11). Bucano alleges that she was placed on suicide watch because during her bail hearing, the attorney for the Commonwealth represented to the Court that, while refusing to take a plea deal, Bucano said that she would kill herself if she had to testify.  (Doc. 26 at 7). Bucano states that she was erroneously placed in the Monroe County Corrections Facility G unit on suicide watch based on her "over my dead body" statement in Court and that Judge Sibum was biased against her.  Bucano further submits that she was removed to G unit because Judge Sibum and Attorney Bellavia wanted her separated from her mother so that Bucano's mother, Bianca Bucano, would plead guilty.  (Doc. 26 at 11-12).  Bucano was released from G unit after approximately one month.  (Doc. 26 at 11).

       On April 3, 2012, Melissa Bucano and her

2

> mother, Bianca Bucano, filed a civil rights
> action under 42 U.S.C. § 1983 in the United
> States District Court for the Middle District
> of Pennsylvania.  On June 6, 2013, this Court
> stated that Melissa Bucano's amended
> complaint (Doc. 26) would go forward only as
> to Melissa Bucano's claim against Judge Sibum
> regarding allegations that Judge Sibum
> directed that Melissa be subjected to
> specific confinement on suicide watch and B
> status on G unit.  (*See* Doc. 52, Order).  On
> August 12, 2013, Judge Sibum filed a Motion
> to Dismiss.  (Doc. 59).  On August 26, 2013,
> Judge Sibum filed a Brief in Support of said
> motion.  (Doc. 61).  Bucano has not filed a
> Brief in Opposition to Judge Sibum's Motion
> to Dismiss.  The only issue before the Court
> is Judge Sibum's alleged role in Melissa
> Bucano being held on suicide watch and
> assigned to a restrictive housing setting.
> (Doc. 51 at 11).

(Doc. 66 at 1-3.)

Magistrate Judge Mehalchick issued the Report and Recommendation under consideration here on December 30, 2013. (Doc. 66.)  Plaintiff filed "Response to Order" on January 14, 2014.  (Doc. 67.)  As noted above, we construe this document in part as objections to the Report and Recommendation.  With this filing, Plaintiff also identifies others she believes should be held responsible for various alleged wrongdoing.  (Doc. 67 at 8-10.)  Plaintiff specifically states that she seeks to amend her complaint to add Attorney Ventrella "since he had a hand in try [sic] to influence plea negotiations in March 2012."  (Doc. 67 at 11.)  Defendant did not file a response to Plaintiff's filing and the time for doing so has passed.  Therefore, this matter is ripe

3

for disposition.

## II. Discussion

*A. Applicable Legal Standards*

**1.   Standard of Review**

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed.  *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).  When objections are filed to a magistrate judge's Report and Recommendation, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made.  28 U.S.C. § 636(b)(1); *Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).  To warrant *de novo* review, the objections must be both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  The court may accept, reject or modify, in whole or in part, the findings made by the magistrate judge.  28 U.S.C. § 636(b)(1).  Uncontested portions of the report are reviewed for clear error.  *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.   Motion to Dismiss Standard**

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406,

4

1409 (3d Cir. 1991)).  Courts are directed to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief."  The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007). *Twombly* confirmed that more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  550 U.S. at 555 (citations omitted).

5

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

*McTernan,* 577 F.3d at 530. *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*McTernan* discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949.] Second, a District

6

> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts.  *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts.  As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Courts may also consider

7

"undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. In addition, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  The court may not, however, rely on other parts of the record in making its decision on a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  We may also consider matters of public record in determining whether dismissal is appropriate. *Sands v. McCormick*, 503 F.3d 263, 268 (3d Cir. 2007).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.   *Plaintiff's Objections***

Plaintiff's filings are neither a model of clarity nor do they

8

comport with the Local Rules of Court of the Middle District of Pennsylvania.  However, making every possible inference in her favor, Plaintiff's Response to Order can be read to specifically object to Magistrate Judge Mehalchick's determination that Plaintiff's claims against Judge Sibum are barred by judicial immunity when she states the following:

> Defendant Judge Sibum acted in the clear absence of her jurisdiction and outside the scope of her jurisdiction, etc.  Judge Sibum had no authority whatsoever of the placement of Plaintiff Melissa Bucano at MCCF.  Judge Sibum purpose for having Melissa's restrictive confinement was to influence plea negotiations–something clearly prohibited–which terminate [sic] the immunity clause.

(Doc. 67 at 7.)

The doctrine of judicial immunity is a well established historic doctrine.  "As early as 1872, the Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872)) (alteration in *Stump*).  *Stump* added that the "necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him[,] . . . [and] the

9

scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." 435 U.S. at 356. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only where he has acted in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57 (internal quotation omitted). The Third Circuit summarized the doctrine as one which provides that "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006).

"The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his official capacity." *Stump*, 435 U.S. at 362. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). Noting that caution should be exercised in extending immunities, the Supreme Court stated that difficulties in applying the doctrine arise "in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. . . . [I]mmunity is justified and defined by the

10

*functions* it protects and serves, not by the persons to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).  The Court went on to explain that, although it had "never undertaken to articulate a precise and general definition of the class of acts entitled to immunity[,] [t]he decided cases . . . suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."  *Id.*

As noted by this Court in *Wallace v. Powell*, Civ. A. Nos. 3:09-cv-286, 3:09-cv-0291, 3:09-cv-0357, 3:09-cv-0630, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009), the "'exemption of judges from civil liability [cannot] be affected by the motives with which their judicial acts are performed.  The purity of their motives cannot in this way be the subject of judicial inquiry.'"  2009 WL 4051974, at *4 (quoting *Bradley v. Fisher*, 80 U.S. 335, 348 (1871)).  Thus, allegations of orders corruptly issued would not deprive a judge of judicial immunity, nor would allegations of a conspiracy between the judge and others.  *Id.* at *5 (citing *Dennis v. Sparks*, 449 U.S. 24, 26, 28 (1980)).

Magistrate Judge Mehalchick found that Judge Sibum is entitled to judicial immunity because Plaintiff's allegations against Judge Sibum relate to Judge Sibum's conduct while issuing orders as a judge of the Monroe County Court of Common Pleas where Judge Sibum had jurisdiction to preside over Plaintiff's underlying criminal

11

proceedings.  (Doc. 66 at 7.)  We agree.

In a previous Memorandum on this issue, the Court expressed concern about the circumstances in which Judge Sibum made the alleged directives that Plaintiff be placed on suicide watch and be held "on B status in G Unit."  (Doc. 19 at 13.)  However, information contained in Plaintiff's Amended Complaint (Doc. 26) and Response to Order (Doc. 67) support Magistrate Judge Mehalchick's conclusion.  Assuming to be true the allegation that Judge Sibum ordered Plaintiff held on suicide watch, Judge Sibum would have done so after the prosecuting attorney provided the Court with information that Plaintiff may be a risk to herself. (*See*, *e.g.*, Doc. 26 at 7.)  Pursuant to the law set out above, even if the information were false and/or the Judge had an improper motive for issuing the alleged order, she was acting as a judicial officer overseeing a criminal case within her jurisdiction and judicial immunity applies.[1]

Similarly, Plaintiff's assertion that Judge Sibum ordered her held "on B status in G Unit" does not support denial of judicial immunity.  Although we previously expressed concern whether it would be "considered a 'judicial act' within Judge Sibum's jurisdiction to specify to a warden the type of confinement in

---

[1] Upon evidence of mental instability, judges handling criminal cases order defendants to be monitored under suicide watch and undergo psychiatric evaluations.  *See*, *e.g.*, *Cooper v. County of Washtenaw*, 222 F. App'x 459, 462 (6th Cir. 2007); *Shallow v. Rogers*, 201 F. App'x 901, 904 (3d Cir. 2006).

which criminal defendant Melissa Bucano should be held" (Doc. 19 at 14), we find that the alleged circumstances surrounding Judge Sibum's actions in this regard do not support the deprivation of judicial immunity.

Plaintiff avers she was told by her mother's attorney that Plaintiff's attorney, the assistant district attorney and Judge Sibum conferred at a hearing and, all but her mother's attorney, agreed on separating Melissa and Bianca Buncano, codefendants who at the time were being housed in the same cell at the Monroe County Correctional Facility ("MCCF"). (Doc. 26 at 11.) In a transcript from a hearing on April 16, 2012, attached to Plaintiff's Response to Order, the subject of Plaintiff's cell separation (which took place on March 22, 2012 (Doc. 67 at 4)) was addressed by Judge Sibum.[2] (Doc. 67 at 15-16.) The assistant district attorney, Plaintiff's counsel (Ventrella) and her mother's counsel (Watkins) were all present at the hearing. (Doc. 67 at 14.) Judge Sibum stated that she called MCCF and asked for separate cells at the request of counsel but did not designate the unit where they would be placed. (Doc. 67 at 15-16.) She also stated that Attorney Ventrella had called regarding Plaintiff's placement in G Unit the week before the April 16th hearing . (Doc. 67 at 16.) Ventrella confirmed this, adding that the warden said she would not move

---

[2] This document, submitted by Plaintiff, is properly considered in a motion to dismiss.

Plaintiff without permission.  (*Id.*)  Judge Sibum stated that, following the call from Plaintiff's attorney, she had her secretary call MCCF to ask that Plaintiff be moved out of G Unit.  (*Id.*) Attorney Ventrella then asked that Melissa and Bianca Bucano be allowed to get back together.  (*Id.*)  Judge Sibum responded: "Again, I did that at counsels' request so I have no objection whatsoever."  (*Id.*)  At no time did Watkins or Ventrella indicate that Judge Sibum's factual averments were inaccurate.  (Doc. 67 at 15-16.)

This evidence shows that the requirements for immunity are met here: Judge Sibum's act was judicial and the parties dealt with her in her official capacity.  *See Stump*, 435 U.S. at 362.  Judge Sibum's involvement in directing that Plaintiff and her mother be housed in separate cells at MCCF was a judicial act in that Judge Sibum acted at the request of/with the consent of Plaintiff's counsel following a meeting where Plaintiff's counsel, her mother's counsel and the assistant district attorney were present.  Further, the parties dealt with Judge Sibum in her official capacity when the matter was discussed and acted upon--the issue arose in the context of Judge Sibum managing the case before her.[3]

---

[3] We note that our conclusion would be the same even if we assume Judge Sibum ordered that Plaintiff be held in G Unit.  Given the context set out in the record, a directive by Judge Sibum that Plaintiff be held in G Unit would at most be acting in excess of her authority and acting in excess of judicial authority does not deprive the actor of judicial immunity. *Stump*, 435 U.S. at 356-57. Similarly, Plaintiff's allegations that Judge Sibum acted for an

Therefore, Defendant's motion is properly granted in that Judge Sibum is entitled to judicial immunity for the alleged wrongdoing regarding Plaintiff's placement at MCCF.  Plaintiff was afforded an opportunity to file an amended complaint against Judge Sibum on this issue (Doc. 20) and any further amendment would be futile.[4]  Thus, we dismiss this case with prejudice.

## C. Plaintiff's Additional Averments and Requests

The Court has struggled to keep filings in this and related matters on track.  As the docket shows, numerous extraneous filings have been submitted.  Attempts to focus Plaintiff and her mother/codefendant Bianca Bucano to properly identify issues and parties have not often met with the desired result.  As Plaintiff's Response to Order shows, Plaintiff raises issues neither considered in the Report and Recommendation nor allowed by previous Court Orders.

By Order of June 6, 2013, the Court dismissed numerous conditions of confinement claims without prejudice and allowed Plaintiff Melissa Bucano an opportunity to raise these claims in a

---

improper purpose, even if true, would not deprive her of judicial immunity.  *Bradley*, 80 U.S. at 348; Wa*llace*, 2009 WL 4051974 at *4.


[4] Amendment based on Plaintiff's request to amend her complaint adding Attorney Ventrella as a defendant (Doc. 67 at 11) would be futile in that he is not "a person acting under color of state law" for purposes of 42 U.S.C. § 1983 liability.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *see also Calhoun v. Young*, 288 F. App'x 47, 50-51 (3d Cir. 2008).

separate filing on or before July 8, 2013.  (Doc. 52 ¶ 11.)  Upon request of Plaintiff and assertion that she was being held in restrictive housing (Doc. 56), the deadline for such filing imposed in the June 6th Order was rescinded by Order of June 28, 2013. (Doc. 57.)  No applicable procedural or substantive rules were waived by this Order.

We again clarify that Plaintiff must follow the Local Rules of Court for the Middle District of Pennsylvania.  Averments against numerous prison officials contained in her "Response to Order" are not properly before the Court and will not be considered.

Plaintiff retains the ability to raise the conditions of confinement claims which were previously dismissed without prejudice as allowed by Court Orders of June 6, 2013, and June 28, 2013.  As it appears from Plaintiff's Response to Order (Doc. 57) that she is able to file documents, if she wishes to file a new case raising the conditions of confinement claims previously dismissed without prejudice, she is to do so on or before March 14, 2014, specifically identifying the individuals responsible for wrongdoings alleged.  Plaintiff is reminded that she is to follow the Federal Rules of Civil Procedure and the Local Rules of Court of the Middle District of Pennsylvania in any future filings in the United States District Court for the Middle District of Pennsylvania.

### III. Conclusion

For the reasons discussed above, we adopt Magistrate Judge

Mehalchick's Report and Recommendation (Doc. 66), grant the Motion to Dismiss Plaintiff's Amended Complaint Filed on Behalf of Judge Sibum (Doc. 59), deny Plaintiff's request to further amend her Complaint (Doc. 67 at 11), and direct the Clerk of Court to close this case.  An appropriate Order is filed simultaneously with this action.


                                        S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: February 7, 2014

17